OPINION OF THE COURT
Alexander Vitale, J.
Plaintiffs, Robert and Joan McMinn, are the owners of 42 Frankel Road, Massapequa, Nassau County. They purchased this house in 1973, lived in it together with their children for about three years and moved out in May of 1976. At that time they rented the house to four young men in their twenties, all of whom were unrelated to each other. They were Donald Stuart, Robert Iaccarino, William Finnerty and Gerry Senese.
In time the building inspector of the Town of Oyster Bay served a summons upon Mr. and Mrs. McMinn, charging them with a violation of the Town of Oyster Bay Building Zoning Ordinance. It was alleged that by this -rental, the McMinns permitted occupancy of the house by other than a family.
*1047 The provision upon which the summons was based is section 1 of article 1 of the ordinance, which provides as follows:
“[A] single or one family dwelling is a building designed for and occupied exclusively as a home or residence for not more than one (1) family and may not contain more than one (1) kitchen.
“A family is: (a) Any number of persons, related by blood, marriage or legal adoption, living and cooking on the premises together as a single nonprofit housing unit; or (b) any two (2) persons not related by blood, marriage or legal adoption, living and cooking on the premises together as a single, nonprofit housekeeping unit, both of whom are sixty two (62) years of age or over, and residing on the premises.”
After they were served with the summons, the McMinns commenced this action, together with the four young men who were residents in the house at that time. The plaintiffs seek a judgment declaring that the above-quoted provisions of the ordinance are unconstitutional. It is alleged that they are entitled to this relief upon specific grounds, namely: (a) the ordinance violates the equal protection clause and the due process clause of the New York State Constitution; (b) the ordinance conflicts with, and is superseded by the New York State Executive Law.
The defendant town denied all substantive allegations of the petition. The matter proceeded to trial.
Certain facts are undisputed. Forty-two Frankel Road is located in an unincorporated area of the Town of Oyster Bay which is zoned for, and limited to, single-family dwellings.
Each side called various persons who were produced as experts in matters relevant to issues raised by the pleadings.
Mr. Paul Davidoff, called as a witness by the plaintiffs, described his qualifications and experience in the profession of urban planning. He said that the town contained 70,500 housing units, of which 93% were arranged for occupancy by one family. It was his opinion that the zoning ordinance was exclusionary to the extent that it limited *1048 occupancy of 93% of the housing stock in the town to persons who met the definition of “family”.
It is Mr. Davidoff’s opinion that in the last decade the number of persons living alone in the United States, and the number of unrelated persons sharing housing, has increased markedly. For example, according to Mr. Davidoff, in 1970, 54.7% of the males in the United States, age 20 to 24, were single, whereas in 1978, the number of unmarried males in this age bracket was 65.8%. He gave similar figures for females.
It was his ultimate conclusion that more young persons are postponing marriage today to a later time in their lives than in the past. He stated that the increasing number of these persons, coupled with the static housing supply available to them outside of one-family zoning, compels them to seek housing elsewhere.
Mr. Floyd Lapp was called as a witness by the plaintiffs, primarily because of his experience in regional planning. He is the director of housing and community development for a quasi-government body known as the Tri-State Regional Planning Commission.
This witness declared that his study led him to the conclusion that insufficient housing units were being created throughout Nassau County and including Oyster Bay township to accommodate those members of the community who fell within the age groups of 20 to 35.
Mr. Arthur Kunz, the planning co-ordinator for the Long Island Regional Planning Board; testified on behalf of the plaintiffs. Mr. Kunz said that his figures reveal that 3,500 housing units were added in the unincorporated area of the Town of Oyster Bay between 1970 and 1980. He also asserted that, according to his calculations, the population of the unincorporated area of the town decreased during these years and did so by some 28,000 persons. The net effect of this was to decrease the occupancy of dwelling units in the towp from 4.5 persons in 1970 to 3.7 persons in 1980. A decrease also ensued in this decade of the percentage of one-family houses in the town, as contrasted to the over-all housing stock. In 1970, one-family homes comprised 92.4% of all housing in the unincorporated area of the town and in 1980, 9i.l%.
*1049 Mr. Kunz concluded, on the basis of his research and professional knowledge, that the decrease of the population in the township was due primarily to the departure of young adults.
According to him, a zoning statute which restricts occupancy of over 90% of the housing units to those who are related to each other has effectively prevented a substantial number of unmarried individuals from finding adequate housing in Oyster Bay township.
The town’s defense began with a witness who expressed what he stated were certain basic social principles. This witness, Dr. William Reynolds, was a practicing clinical psychologist and also an attorney.
Dr. Reynolds said that in his professional judgment suburbs were created for families. People who move to the suburbs, in his experience, look for neighborhoods that permit them to pursue family values and to live with people that share common interests. He explained the basic characteristic of a family as a child rearing function.
The witness was asked to evaluate the definition of family, as contained in the town ordinance. It was Dr. Reynolds’ opinion that the definition of family in the ordinance, as it now stands, was a reasonable one. He based this conclusion upon his determination that the definition satisfied the standards of a majority of residents of the town.
The principal witness produced by the town was Mr. David Portman. This witness is a community planning consultant. He has acted as a consultant to various municipalities and has prepared comprehensive zoning plans for a number of municipalities in the New York and Connecticut areas.
Mr. Portman took issue with the projection offered by the plaintiff’s expert, Mr. Davidoff. It was his opinion that Mr. Davidoff had failed to take into account what he believed to be an established fact, namely, people in the age group of 20 to 24 left Nassau County for reasons not related to housing. According to this witness, the manner of life and community facilities in Nassau County did not meet the needs of people in that age group. They, therefore, went *1050 into purely urban areas. He pointed out, however, that in his experience many of those who leave in that age bracket tend to return later for the purpose of raising a family. The needs of that life-style are best met in the suburbs.
Mr. Portman did say that in the country as a whole, he believed that 22% of the population comprises single individuals. He disagreed with the testimony of the plaintiffs’ witness, Mr. Kunz, that those persons in the age group of 20 to 24, who left, did so because of a lack of housing.
This witness added that the number of unrelated persons living together increased substantially between 1970 and 1979, doubling in fact.
EXCLUSIONARY ZONING
A determination of the issues raised by the plaintiffs’ complaint may best begin with consideration of whether or not the ordinance excludes young adults from residing in Oyster Bay.
The tenor of the plaintiffs’ proof was that the persons who are in this age group frequently seek to live together, but are barred from doing so in 90% of the town’s housing units. Admittedly, the zoning ordinance does prohibit unrelated people from living together in one-family houses. This requires that some review be made of the purposes of the zoning ordinance.
The authority of a town to enact zoning legislation is derived from section 261 of the Town Law. Pursuant to this statute, the town board is empowered by ordinance “to regulate and restrict *** the density of population, and the location and use of buildings *** for *** residence or other purposes”. Said power is granted for “the purpose of promoting the health, safety, morals, or the general welfare of the community”.
This grant of power by the Legislature to local government may be challenged on constitutional grounds only if clearly arbitrary and unreasonable and having no substantial relation to the public health, safety, morals or general welfare. (Euclid v Ambler Co., 272 US 365, 395.) A zoning ordinance carries a presumption of constitutionality. While the presumption is rebuttable, that must be demon *1051 strated, beyond a reasonable doubt. (Lighthouse Shores v Town of Islip, 41 NY2d 7.)
In assessing the validity of an exercise of the police power, the circumstances of each case and the character of the particular regulation must be considered for the purpose of determining whether it is arbitrary or reasonable, and whether it is really designed to accomplish a legitimate public purpose. (Matter of Wulfsohn v Burden, 241 NY 288, 298.) However, simply setting aside certain residential areas exclusively for single-family dwelling is not arbitrary. Such designations have been held to be a valid exercise of the zoning power. (Village of Belle Terre v Boraas, 416 US 1, 9; Group House of Port Washington v Board of Zoning & Appeals of Town of North Hempstead, 45 NY2d 266, 271.)
“The police power is not confined to [the] elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.” (Village of Belle Terre v Boraas, supra, p 9.)
Witnesses testified to the changing social standards whereby unmarried young adults more and more preferred to live outside of the family home in the interval between obtaining maturity and marriage. This change cannot seriously be disputed. It is evidenced on every side by changing economic conditions, by publications devoted to this group of our population and, in general, by everyday experiences.
The plaintiffs went further, however. They have attempted to show that this group of individuals is limited at this state of their economic growth to housing, which costs less than that located in apartment houses in Oyster Bay township. Further, a sufficient number of multiple dwelling units to meet the demand simply does not exist in Oyster Bay township, even if we assume these young adults were able to afford them.
This thesis is undoubtedly persuasive. Extensive testimony by eminent specialists in the field of urban planning was adduced in support of it. However, despite these efforts, the proof offered was inconclusive. It was certainly *1052 insufficient to sustain a finding of unconstitutionality on the ground of exclusionary zoning. The plaintiffs’ contentions in this respect must be rejected as unproven.
UNEQUAL PROTECTION
Plaintiffs alleged that the ordinance is flawed on a basic constitutional ground, namely, that it denies equal protection of the laws to all citizens and that it does so by unreasonably restricting the use of one-family housing. As stated at the outset, in Oyster Bay township, a one-family dwelling jnay be occupied by only those who are related to one another by blood, marriage or adoption, with one significant exception, which will be referred to later. Putting it another way, the zoning ordinance prohibits any unrelated persons from residing in the house, whether they consider themselves as members of the household or not.
The Counties of Nassau and Suffolk include within them 12 townships. A review of the regulations regarding occupancy of one-family houses in the 11 townships, exclusive of Oyster Bay, reveals that none of these townships has adopted an ordinance which is as restrictive as that of the Town of Oyster Bay.
The New York State Constitution, in section 11 of article I thereof, provides that no person shall be denied the equal protection of the laws of this State or any subdivision thereof.
The question is whether the statute has deprived unrelated persons who wish to live together as a houskeeping unit in a one-family house in the Town of Oyster Bay of equal protection of the law. The characteristics of a family, according to the statute under attack, and the testimony of the town’s witnesses, are primarily those which bind people together by reason of a blood relationship, one founded on marrige, or on adoption.
The plaintiffs, on the other hand, contend that these characteristics should not be the sole and determining factors of what constitutes a family for residential purposes.
In City of White Plains v Ferraioli (34 NY2d 300), the court distinguished between a group home and a commune style of living. The former was described as a permanent *1053 relationship akin to a traditional family, but one which may be sundered by death, divorce, or emancipation of the young. The latter was described as akin to the shifting occupancy of college students who would come and go each school year. (Cf. Village of Belle Terre v Boraas, 416 US 1, supra.)
The Court of Appeals, in Ferraioli, went on to say that a municipality has a proper purpose in largely limiting uses in á particular zone to single-family units. However, if the municipality requires that the relationships in the family unit be limited to those founded on blood or adoption, then such definition of family may well be too restrictive.
The highest court of our sister State of New Jersey was called upon to consider a definition of “family” that utilized the same standard as the Oyster Bay statute. It was determined that the statute there went too far. (State v Baker, 81 NJ 99, 105-107.)
The largest State, in terms of population, California, has considered the question that arose in this case. A local ordinance defined family as “an individual, or two or more persons related by blood, marriage or legal adoption, living together as a single housekeeping unit in a dwelling unit.” In City of Santa Barbara v Adamson (27 Cal 3d 123, 132-133), the definition was found unduly restrictive.
Ferraioli (supra, pp 305-306) declared that: “Zoning is intended to control types of housing and living and not the genetic or intimate internal family relations of human beings * * * So long as the group home bears the generic character of a family unit as a relatively permanent household, and is not a framework for * * * transient living, it conforms to the purpose of the ordinance”.
Measured against this language, it is apparent that the sole criteria for determining what is a family in the Town of Oyster Bay ordinance is a relationship that is based upon a rigid external standard. The statute would appear to make no allowance and provide no inclusion for those who live in a relationship that possesses those characteristics that are commonly considered to be part of the manifestations of family life. These would include a common kitchen, shared sanitary facilities, shared yard, joint con *1054 cern for the maintenance of the dwelling, social interaction with each other, the sharing of responsibilities of expenses, and caring for each other, to a greater or lesser degree.
The statute in question, however, does contain one exception. It provides “A family is [also defined to be] any two (2) persons not related by blood, marriage or legal adoption, living and cooking on the premises together as a single nonprofit housekeeping unit, both of whom are sixty two (62) years of age or over, and residing on the premises.”
It will thus be seen that the statute in the Town of Oyster Bay does permit two unrelated persons to live in a one-family zone provided they meet a single test, namely, that they are over 62 years of age. All of the other 11 townships in Nassau and Suffolk Counties allow at least two unrelated persons or more to so live together in a one-family zone. The conditions include in substance those of the Oyster Bay ordinance, immediately above referred to, to the extent that these inhabitants are required to live together, perform their cooking together and display the characteristics of one housekeeping unit, but there is no requirement as to their age.
It may reasonably be concluded that in these other 11 townships no necessity to fulfill a legislative goal related to age was found to be present.
In evaluating whether a statute constitutes a denial of equal protection, the test to be applied is whether different treatment of a separate class of citizens bears a reasonable relationship to some legitimate legislative objective. (People v Whidden, 51 NY2d 457.) It has been held that the application of the equal protection clause will be applied with flexibility based upon the constitutional and societal importance of the interest adversely affected. (Alevy v Downstate Med. Center of State of N.Y., 39 NY2d 326.)
In classifying fundamental interests of citizens, it would appear self-evident that few are greater than the right to choose one’s place of residence.
The Town of Oyster Bay ordinance by permitting occupancy of one-family homes, in one instance based upon the relationship of the occupants, and another based upon their attainment of a certain age, exhibits a lack of ra *1055 tional purpose. It is true that the equal protection clause will take into account the societal importance of the interests that may be affected by it. However, in this case it is difficult to arrive at any rational explanation for the distinction. This is not to say that age considerations may not bear a rational relationship to a proper governmental objective.
In Maldini v Ambro (36 NY2d 481), the Town of Huntington (which adjoins the Town of Oyster Bay) enacted an ordinance that created a residence district providing for a retirement community. The ordinance was upheld as not exclusionary. Significantly, the Court of Appeals stated (supra, p 487): “It is one thing for a local zoning board to deny an application based solely upon the age of the intended residents; it is quite another for it to establish a zoning district allowing, among other things, residences designed for, but not necessarily limited to, aged persons. ‘Age’ considerations are appropriately made if rationally related to the achievement of a proper governmental objective *** In the particular case before us, there is no indication whatever that the intent or the effect of the ordinance is to segregate the community according to age or to discriminate against younger people”.
Ordinances which fix a minimum age for occupants in a district have generally been upheld. (Campbell v Barraud, 58 AD2d 570.) Here, again, however, the ordinance is generally found to be justified on the ground that government may properly recognize the interests of aged citizens without violating the equal protection clause. It may do so if the interests of other groups are adequately recognized in the zoning scheme.
The Oyster Bay ordinance, however, simply establishes a special exception. The effect of this statute is to discriminate in the occupancy of one-family housing solely on the basis of age.
The trial evidence included sufficient factual material so that it is clear that the population of the Town of Oyster Bay does not differ markedly from the population of the other townships in Nassau County, and certainly that in the western towns of Suffolk County. It may therefore be *1056 reasonably concluded that the ordinance, by setting up an exception for those over the age of 62 years, does not reflect any population particularity that is unique to Oyster Bay township.
It is found that the statute,, insofar as it prohibits occupancy of a residence in a one-family zone by more than two unrelated individuals, is constitutional. However, the condition precedent, namely, that they both be over the age of 62 years is an unreasonable exercise of the town’s police power and therefore is unconstitutional.
The court may not rewrite this legislation. However, it may determine what part of it fails to meet constitutional standards. “[W]here the unlawful provisions are separable from those that are lawful, and what remains is capable of being executed and stands complete in itself, it is the duty of the court to disregard the unconstitutional part of the statute and give force and effect to that which is constitutional.” (Bohmer v Haffen, 161 NY 390, 401.) The statute may not be enforced against those unrelated persons, not exceeding two in number, who may reside in a building, as a single housekeeping unit, in a one-family zone, within the unincorporated areas of the township.
The plaintiffs further contend that the ordinance must be declared unenforceable on the ground that it conflicts with the provisions of the Executive Law of the State of New York, more popularly known as the Human Rights Law. The applicable provision is claimed to be subdivision 5 of section 296. This provision provides:
“(a) It shall be an unlawful discriminatory practice for the owner * * *
“(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the *** marital status of such person or persons.”
It is alleged that under this ordinance the McMinns were faced with inconsistent laws. On the one hand, they were free to rent their home to a married couple under either law. However, they would be in violation of the Oyster Bay ordinance if they rented to two unmarried persons under the age of 62 years. They would also be in violation, but *1057 this time of the Executive Law, if they refused to rent to the same unmarried couple.
In opposition to this assertion, the defendant argues that the statutes are designed to accomplish different governmental objectives. The zoning ordinance, it is pointed out, is intended to achieve a balance of land use throughout the town. It is apparent, under the zoning scheme, unmarried couples or unmarried individuals may, if they so wish, reside without hindrance in apartment house zones.
The Executive Law is designed to ensure that citizens will not be excluded from renting an available accommodation solely on the ground of their marriage status. No matter how one phrases it, the end result is the same. Persons who wish to rent a home in a one-family zone in Oyster Bay township may not do so if they are found to be unrelated to each other and under the age of 62 years.
Under the Executive Law, there is no exception on the basis of age. The only standard is that the premises sought to be occupied as a tenant are housing accommodations.
It is worth reminding ourselves that the police power resides within the State and is delegated by it, insofar as zoning is concerned, to the town. (Town Law, § 261.) “It is well settled that a local law may not prohibit that which State law permits”. (Seacoast Prods. v City of Glen Cove, 50 AD2d 579.)
This principle is illustrated by the fact pattern in Abbott House v Village of Tarrytown (34 AD2d 821). There the Zoning Ordinance of Tarrytown, at that time, defined a family in terms of marriage, blood or adoption. The plaintiffs sought to occupy a one-family house as an agency boarding home for six unrelated children. It was here that the zoning ordinance had the effect of thwarting the State’s policy of providing for neglected children. (Abbott House v Village of Tarrytown, supra, p 822.)
As was pointed out in the Incorporated Vil. of Old Field v Introne (104 Misc 2d 122), the test is that if the subject is a matter of substantial State concern, the Legislature may act, even though there may be countervailing local concerns.
*1058 The Oyster Bay ordinance does not contain any flexibility whatsoever insofar as permitting rental to unmarried or unrelated persons is concerned. This again is in contrast to the ordinances of the adjoining towns. In each of them, latitude is permitted, although varying from town to town, whereby unrelated or unmarried persons may rent in a one-family zone.
The rigidity of the Oyster Bay ordinance precludes any attempt at harmonizing it with the objectives of the Executive Law. Those purposes are set forth in subdivision 3 of section 290. It is apparent that the State has assumed to itself an overriding responsibility to ensure that access to housing throughout the State will not be denied on the ground of marital status, or lack of it.
It is therefore found that the Zoning Ordinance of the Town of Oyster Bay is invalid to the.extent that it seeks to prohibit occupancy of a residence in a one-family dwelling solely on the ground that the proposed tenants are not married to each other.
The foregoing constitutes findings of fact herein and the decision of the court.
Submit judgment on notice. It shall prohibit the Town of Oyster Bay and its officials from enforcing the provisions of section 1 of article 1 of the zoning ordinance of said town, to the extent that it attempts to prohibit occupancy of a one-family dwelling, in the unincorporated areas of said town, by two unrelated persons. Said judgment shall, in addition, prohibit said town and its officials from enforcing the provisions of said ordinance, to the extent that it prohibits occupancy of a one-family dwelling by persons who may not be married to each other.