ROBERT MCMINN et al., Appellants-Respondents, v TOWN OF OYSTER BAY et al., Respondents-Appellants.

Second Department, December 17, 1984

### APPEARANCES OF COUNSEL

*Gerald P. Halpern, P. C. (Winifred Pasternack* of counsel), for appellants-respondents.

*Robert Schmidt, Town Attorney (Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P. C. [George J. Farrell, Jr.,* and *William D. Wall],* of counsel), for respondents-appellants.

### OPINION OF THE COURT

LAZER, J. P.

■ The issue is the constitutionality and statutory validity of a zoning restriction that, with a limited exception for two persons 62 years of age or over, restricts occupancy of one-family homes to persons related by blood, marriage or adoption. While the proffered theories of illegality are numerous, we conclude that the restriction is fatally unconstitutional because it violates the due process clause of the State Constitution (NY Const, art I, § 6).

I

Oyster Bay is a large but typical suburban town largely zoned for single-family residential use with more than 90% of its housing consisting of one-family homes and a population in excess of 246,000 people in its unincorporated areas. The Oyster Bay zoning ordinance defines "family" as "any number of persons related by blood, marriage or legal adoption, living and cooking on the premises together as a single nonprofit housekeeping unit" or any two persons not so related who are 62 years of age or over and live and cook together on the premises as a single nonprofit housekeeping unit (Building Zone Ordinance of the Town of Oyster Bay, art 1, § 1). The current controversy originated when Robert and Joan McMinn rented their four-bedroom house in the D residence district to four unrelated young men. The only residential use permitted in the D district is one-family housing. In December, 1976, the Oyster Bay building inspector instituted criminal proceedings in the Nassau County District Court against the McMinns, charging violation of the zoning ordinance in that they were "renting to more than one family".

The McMinns and their four tenants responded with this action against the town, its supervisor and its building inspector, to enjoin the District Court prosecution and for a declaration that the zoning ordinance violates their constitutional right to equal protection and due process and is legally inconsistent with a portion of the Human Rights Law, specifically section 296 of the Executive Law. The District Court proceedings were adjourned during the trial of this action and have now been enjoined pending the outcome of these appeals.

At the trial, the tenants testified that their relationships with each other were those of friends and co-workers. They had grown up in the area and wished to continue living in the vicinity of their families and friends, but no longer wanted to reside with their parents. They did not wish to live alone, however, and were unable to afford regular apartments. By living together, they were able to share rent, utility and cleaning obligations. During the proceedings, it was revealed that after the commencement of this action the McMinns had contracted to sell the house and relinquished possession to the vendee, without conveying title. The four tenants had moved to another single-family residence within the Town of Oyster Bay, and the sole occupants of the house were thus the vendee, her adopted daughter, and an unrelated man who lived there with them — again a violation of the ordinance.

Much of the expert testimony produced at the trial dealt with demographic trends of national and townwide import. It was thus revealed that the percentage of American households consisting of unrelated persons living together in 1980 had doubled since 1970, although the trend had been resisted in Oyster Bay because the zoning ordinance prevented any substantial number of unrelated persons from obtaining housing. According to plaintiffs' experts, the ordinance contributed to the fact that Oyster Bay's population had undergone a decrease since 1970 and that the average occupancy of the dwelling units in unincorporated areas was reduced from 4.05 persons in 1970 to 3.47 persons in 1980. These experts were of the belief that voluntary formation of households consisting of unrelated persons stems from the desire to overcome isolation and to avoid the high cost of living alone. The testimony also indicated that households consisting of unrelated persons have been achieving greater acceptance in society and, even more significantly, that their stability actually approximates that of traditional families in first marriages. The experts thus concluded that unrelated persons should be permitted to occupy homes in the same numbers as traditional families would under normal circumstances.

The town's experts believed that Oyster Bay's definition of family is reasonable because persons who move to the suburbs seek neighborhoods that permit them to pursue family values. Rejecting the idea that young single adults have moved from Oyster Bay because of the lack of available housing, these witnesses ascribed the exodus to the fact that community facilities and life styles in Nassau County are inappropriate to the needs of the young. No evidence was offered, however, to show how or whether occupancy of a single-family residence by unrelated persons disturbs the character of single-family residential areas, increases parking and traffic problems, results in overcrowding, or creates any similar problems.

At the trial's end, the court denied defendants' motion to dismiss the action as moot and subsequently held that the ordinance was unconstitutional to the extent that it prohibited occupancy of a one-family dwelling by two unrelated persons because the exception permitting two unrelated individuals 62 years of age or older to occupy a one-family house violated the State equal protection rights of persons younger than 62. The court also decided that the prohibition against two unmarried persons residing together in a one-family house illegally conflicted with section 296 of the Executive Law (see *McMinn v Town of Oyster Bay*, 111 Misc 2d 1046).

The plaintiffs have appealed seeking a declaration that the ordinance is invalid as it relates to occupancy by more than two persons unrelated by blood, marriage or adoption living together as a single housekeeping unit. The town has cross-appealed to reverse the determination that the ordinance is partially invalid.

## II

Plaintiffs contend that the Oyster Bay zoning ordinance is invalid because (1) it contravenes the prohibition against discrimination on the basis of marital status set forth in the Human Rights Law (Executive Law, § 296, subd 5, par [a], cl [1]); (2) it violates the equal protection clause of the State Constitution (NY Const, art I, § 11); (3) it is constitutionally impermissible exclusionary zoning; and (4) it violates the due process clause of the State Constitution (NY Const, art I, § 6). In their complaint, plaintiffs expressly limited the scope of this action to their claims that the ordinance violates New York State constitutional and statutory provisions, specifically declared that they were asserting "no federal claims whatever", and, "pursuant to *England v Louisiana Medical Examiners,* 375 US 411 (1964), expressly reserve[d] the right to litigate all

federal claims in a federal forum". The trial court limited its decision to the State issues confronting it.

■ Contrary to the defendants' contention, the issues have not been mooted, nor have plaintiffs been deprived of standing, by either the McMinns' contract to sell the house or by the tenants' move to another one-family house within the Town of Oyster Bay (see *Younger v Harris,* 401 US 37, 41; cf. *Group House v Board of Zoning & Appeals,* 45 NY2d 266, 271). The criminal prosecution is still pending, and the McMinns, who are the owners of several other houses within the Town of Oyster Bay, at least one of which is concededly subject to the same ordinance, have asserted a claim that the ordinance has had a negative effect on the value of their property. As to the tenants, they remain in violation of the ordinance in their new home.

■ Turning to the first of plaintiffs' attacks upon the validity of the ordinance, we are compelled to reject their argument and the trial court's determination that the ordinance conflicts with the Human Rights Law (Executive Law, art 15). Subdivision 5 of section 296 of the Executive Law provides in part that:

"(a) It shall be an unlawful discriminatory practice for the owner * * *

"(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the * * * marital status of such person or persons."

Under the interpretation adopted in *Hudson View Props. v Weiss* (59 NY2d 733), a restriction against occupancy by persons who have no familial relationship does not constitute illegal discrimination based on "marital status" under the statute (see, also, *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.,* 51 NY2d 506; *Maryland Comms. on Human Relations v Greenbelt Homes,* 300 Md 75, 475 A2d 1192).

Despite their categorical disavowal of any intention to assert any Federal claims in this action and their election to rely entirely upon the provisions of the State Constitution and the Executive Law, the plaintiffs have turned to the Federal Constitution to support their equal protection argument. They thus assert that the restrictive definition of "family" is subject to a strict scrutiny analysis under the State Constitution because it infringes upon the fundamental rights of free association, travel and privacy that are guaranteed by the Federal Constitution. Plaintiffs hope, no doubt, that if they fail to prevail in this action they will be able to reassert the same underlying Federal claims in a subsequent Federal suit based on the Federal equal protec-

tion clause. In view of this strategic decision to avoid Federal issues and in light of our resolution of the due process challenge to the ordinance, we deem it inappropriate to attempt to invoke a State constitutional right of equal protection based on grounds that the plaintiffs have otherwise abjured and reserved for a Federal forum.

Nor do we find it necessary to determine whether the trial court was correct in concluding that the ordinance runs afoul of the State equal protection clause to the extent that it contains an exception that permits two unrelated persons 62 years of age or older to reside in a one-family house while excluding unrelated persons under the age of 62. Since the conclusion we ultimately reach is that the restriction as a whole is violative of due process, no useful purpose would be served by separately evaluating the validity of the allegedly unconstitutional exception contained in it.

Finally, we agree with the trial court that the proof adduced at trial was insufficient to sustain a finding that the ordinance constitutes exclusionary zoning. Plaintiffs failed to make the requisite factual demonstration as to regional needs or that the ordinance was enacted with an exclusionary purpose (see *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338; *Berenson v Town of New Castle,* 38 NY2d 102). We arrive then at the ultimate and dispositive issue — the due process clause of the New York State Constitution.

### III

The current dispute is a local reflection of a controversy of nationwide character that springs from significant alterations in demography, social concepts, housing conditions and economics that have occurred over the last several decades and affected substantial segments of the population. Confronted with a housing shortage that particularly affects them, young and single suburban residents have sought to avoid some of the consequences through sharing housing costs by living with persons with whom they are unrelated by blood, marriage or adoption. The conflict is between the efforts of these population groups to satisfy their housing needs and the efforts of local governments to preserve what is viewed as the traditional character of one-family residential areas (see Note, "Burning the House to Roast the Pig": Unrelated Individuals and Single Family Zoning's Blood Relation Criterion, 58 Cornell L Rev 138; Shilling, Council of Planner's Librarians Bibliography, No. 31; Rathkopf, The Fictional Family: Some Thoughts Regarding Non-Traditional

Households, ALI-ABA Land Use Litigation [1981]; The Definition of "Family" in Single-Family Zoning, 42 Mont L Rev 165).

The causes of the housing difficulties faced by the young and the single are well known. They include, of course, the fact that large numbers of young persons have moved from parental homes into the housing market, the persistent trend toward the deferral of marriage, and the dramatic upsurge in the number of broken marriages and single parent households. When these factors coalesce with the scarcity of multifamily housing in the suburbs and the financial incapacity of the young and the single (including single parents) to buy or rent houses for their exclusive use, myriad members of the new and the maturing generations confront the choice between living in inadequate or illegal suburban accommodations or moving from where they were born, nurtured and matured to urban areas (see *Holy Name Hosp. v Montroy,* 153 NJ Super 181; Rathkopf, *op. cit.,* pp 93-112). The evidence reveals a positive explosion in the number of households across the land in which unrelated individuals band together to share housing and its costs.

Paralleling these problems is the predicament of aging homeowners who are often marooned in houses too large for their needs and too costly to maintain at the same time that their ability to rent to others is constrained by local zoning regulations which also leave them without adequate recourse to multifamily housing. The result is "The old can't get out; the young can't move in" (see Trapped in the American Dream, *Newsday,* April 30, 1984, p 7, col 1; Elderly Find Solace and Savings as They Share Homes and Lives, *New York Times,* Aug. 6, 1984, p B1, col 4). The consequent sharp proliferation in the number of illegal two-family houses has confronted local governments with further problems in balancing the needs of their populations with traditional zoning strictures (see *Matter of Sherman v Frazier,* 84 AD2d 401).

## IV

In its original zoning context, "single-family" referred to the physical structure of the dwelling to distinguish that type of building from apartment houses or other multiple dwellings; it was not intended to regulate the composition of the household (see Rathkopf, *op. cit.,* p 93; Note, 23 Hastings LJ 1459). As zoning has evolved, however, local governments have proceeded to define "family" on the basis of the relationships between members of the unit, numbers of its members, its permanence, or in terms of maintenance of a common household or common use of the kitchen (Shilling, *op. cit.,* p vii; Ann., 71 ALR3d 693).

Broader definitions have included unrelated individuals functioning as a single housekeeping unit while narrower ones have limited the unit to those related by blood, marriage or adoption (Rathkopf, *op. cit.,* pp 95-96). In the current era, these definitions of family are literally awash with constitutional and societal implications.

In *Village of Belle Terre v Boraas* (416 US 1), the Supreme Court found a restriction similar to that in Oyster Bay not violative of the Federal due process clause. Although some commentators believe the *Belle Terre* holding is inapplicable when a large municipality is involved (see Rathkopf, *op. cit.,* pp 98-99), we deem it unfruitful to engage in such distinctions. Considering *Belle Terre's* sweeping language, we are disinclined to create a thicket of due process distinctions based on the size of suburban communities. In this action brought on State grounds, plaintiffs can draw no solace from *Belle Terre's* restrictive interpretation of the Federal due process clause.

What does warrant determinative consideration is the claim that the Oyster Bay restriction is arbitrary and irrational and therefore in violation of the due process clause contained in section 6 of article I of the State Constitution. In construing that clause, the Court of Appeals has sometimes differed with the Supreme Court's view of due process, basing the differentiation on the unique language of the New York clause, the different purposes served by the Federal and State provisions, the extensive history of due process protections afforded the citizens of this State, and upon principles of federalism (see *Cooper v Morin,* 49 NY2d 69, 79, cert den *sub nom. Lombard v Cooper,* 446 US 984; *Sharrock v Dell Buick-Cadillac,* 45 NY2d 152, 159-161). On this record, section 6 of article I of the State Constitution provides ample basis for the conclusions we reach.

Broad as it is, municipal zoning power is not without limits. A zoning regulation must bear a substantial relation to the health, welfare and safety of the community (*Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, *supra*) and it may not be arbitrary, for there must be a reasonable relation between the end sought to be achieved and the means used to achieve the end (*French Investing Co. v City of New York,* 39 NY2d 587; *Matter of Board of Educ. v City Council,* 29 NY2d 681; 1 Rathkopf, The Law of Zoning and Planning [4th ed], §§ 5.01, 5.02). A municipality may not, for example, zone to exclude persons having a need for housing within its boundaries or within the region (see *Berenson v Town of New Castle,* 38 NY2d 102, *supra; Matter of Golden v Planning Bd.,* 30 NY2d 359, app dsmd 409 US 1003).

Nevertheless, a municipal ordinance does carry with it a strong presumption of constitutionality (see *Lighthouse Shores v Town of Islip,* 41 NY2d 7) and judicial inquiry ends if there are any facts known or reasonably to be perceived which justify the legislation (see *Town of Huntington v Park Shore Country Day Camp,* 47 NY2d 61). The town argues that an abundance of reasons exist to justify the restrictions it defends. The reasons, we are told, include preservation of the character of single-family residential areas, reduction of parking and traffic problems, control of population density and prevention of noise and disturbance. Although these concerns are legitimate (see *Matter of Golden v Planning Bd., supra; Stevens v Town of Huntington,* 20 NY2d 352), a community may not, under the guise of protecting family values, apply completely arbitrary restrictions (see *Group House v Board of Zoning & Appeals,* 45 NY2d 266, *supra*).

In evaluating the constitutional validity of the challenged restrictions, we take judicial notice of the rather obvious fact that the character of the suburbs has been substantially altered over the last 25 years (see Long & Glick, Family Pattern in Suburban Areas: Recent Trends [Schwartz, The Changing Face of the Suburbs, p 43]; Boder, The Future of the American Suburb, in Dolce, Suburbia, p 193). Whatever the original accuracy of the traditional image of suburbia — homogeneity, standardization and conformity — few can doubt that modern suburban communities increasingly present diversity and new dynamics (see Masotti & Hadden, Suburbia in Transition, p 3; Dolce, Suburbia, pp vii-viii; Marshall, Suburban Life Styles, in The Urbanization of the Suburbs, pp 123, 145). While the traditional image linked the suburbs with child-centered family units, modern suburbia has spawned the very groups that historically preferred city life — single persons, the elderly and childless couples (see Marsh & Kaplan, The Lure of the Suburbs, in Dolce, Suburbia, p 47; Masotti & Hadden, *op. cit.,* p 8). As these persons seek to remain in the suburbs rather than leave them, suburban communities have acquired a full range of life styles and diversity — with increasing employment, recreational and entertainment opportunities for young single adults (see Masotti & Hadden, *op. cit.;* Boder, *op. cit.,* p 193; Schwartz, The Changing Face of the Suburbs, p 328). The problem is housing.

■ In attempting to regulate that problem, the reach of the Oyster Bay ordinance exceeds by far the original purposes of "single-family" designations in zoning ordinances — to distinguish that type of building from apartment houses and other multiunit dwellings (Note, 23 Hastings LJ 1459). The proper

intent of the "single-family" designation is "to control types of housing and living and not the genetic or intimate internal family relations of human beings" (*City of White Plains v Ferraioli,* 34 NY2d 300, 305). By regulating the genetic and internal composition of the one-family household the Oyster Bay ordinance conclusively presumes that occupancy by persons unrelated by blood, marriage or adoption is inimical to the general welfare (see *State v Baker,* 81 NJ 99; *Atkisson v Kern County Housing Auth.,* 59 Cal App 3d 89; Note, 72 Mich L Rev 508, 548). If that presumption had any merit in an earlier era, it is wholly unsupported by this record, and it cannot withstand scrutiny.

That scrutiny must proceed without the benefit of any presumption that the Town Board investigated and found sufficient facts to support the restrictions it enacted. There is nothing in the record to indicate that any investigation was undertaken, there are no facts in the record to support the restrictions proffered by the town, and no such facts may be reasonably inferred (see *Bellanca v New York State Liq. Auth.,* 50 NY2d 524, 530-531, revd on other grounds 452 US 714, on remand 54 NY2d 228; *Peconic Ave. Businessmens' Assn. v Town of Brookhaven,* 98 AD2d 772). In *Bellanca,* the Court of Appeals declined to accept any presumption that the State Legislature had investigated and knew facts that supported the intrusion upon First Amendment rights involved in banning topless dancing in establishments that served liquor. With due process the issue, we, too, refuse to accept any presumption that the Oyster Bay Town Board investigated the facts and discovered that unrelated persons who reside in one-family houses as a single housekeeping unit disrupt the tranquility or character of neighborhoods and produce overcrowding and more noise, parking and traffic problems than do families related by blood, marriage or adoption. Our reluctance to presume the existence of such an investigation or of such knowledge by the Oyster Bay Town Board is heightened by the fact that none of the other towns on Long Island have found it necessary to enact an ordinance as restrictive as that of Oyster Bay (see, e.g., Babylon Town Ordinance, subpart HH; Brookhaven Town Code, § 85-1; Huntington Town Code, § 62-6; North Hempstead Building Zone Ordinance, § 70-231; Code of Town of Riverhead, § 108-3; Code of Town of Shelter Island, ch 113-1 [b]; Town Code of Southampton, ch 69). In the absence of a presumption of investigation and knowledge, and evidence to support the town's position, we cannot on this record accept the further and conclusive presumption of the ordinance that unrelated people who join to share companionship and costs

as a single housekeeping unit in one-family houses in Oyster Bay disrupt and alter their neighborhoods and create the other problems we have mentioned.

The issues we now decide are not unique to New York. The Supreme Courts of California, Illinois, Michigan and New Jersey all have held that zoning classifications that prohibit unrelated persons from residing in single-family dwellings as a single household unit or that limit the numbers of unrelated persons that may do so are arbitrary and unconstitutional under their State Constitutions because they sweep in so many individuals who cause no traffic, noise or congestion problems and thereby prohibit a wide variety of innocuous users (*State v Baker, supra; City of Santa Barbara v Adamson,* 27 Cal 3d 123; *City of Des Plaines v Trottner,* 34 Ill 2d 432; *Charter Township of Delta v Dinolfo,* 419 Mich 253, 351 NW2d 831). Although the Court of Appeals has never directly passed on the question that now confronts us, it has not hesitated to shunt aside the blood-marriage-adoption definition when it has been raised to prevent handicapped, neglected or foster children from living together in a one-family house (see *Group House v Board of Zoning & Appeals,* 45 NY2d 266, *supra; City of White Plains v Ferraioli,* 34 NY2d 300, *supra;* see, also, *Crane Neck Assn. v New York City/Long Is. County Servs. Group,* 92 AD2d 119, affd with opn 61 NY2d 154).

While we recognize the legitimate local interest in preventing overcrowding and traffic congestion, restricting single household composition to related persons is not a means reasonably related to the ends sought (see *State v Baker, supra; Charter Township of Delta v Dinolfo, supra; Moore v East Cleveland,* 431 US 494, 513-521 [Stevens, J., concurring]), and it has even been characterized as "burn[ing] the house to roast the pig" (*Larson v Mayor & Council of Borough of Spring Lake,* 99 NJ Super 365, 374). Ordinances that tie the definition of family unit solely to blood, marriage or adoption serve no density function because there are no corresponding limitations on the size of traditional families and it is not necessarily true that unrelated groups residing as a single housekeeping unit generate more traffic, parking and noise problems than groups of related persons. Traditional family groups are as mobile today as the nontraditional, and possession of two or more cars by traditional groups is quite common (*State v Baker,* 81 NJ 99, 107-108, *supra; City of Santa Barbara v Adamson,* 27 Cal 3d 123, 133, *supra; City of Des Plaines v Trottner, supra,* pp 437-438).

The arbitrary nature of the Oyster Bay ordinance is emphasized by the fact that it prohibits as few as two unrelated persons

from sharing a single-family residence. How the presence of a few unrelated persons in a single-family residence could disturb the family characteristics of a neighborhood or pose a threat to the public welfare is difficult to perceive. Not only is a house that is adequate to accommodate a traditional family more than adequate for occupancy by two or three unrelated persons, but that number is actually below the community's average density (see *Collins Realty v City of Margate City,* 112 NJ Super 341; 2 Rathkopf, Law of Zoning and Planning [4th ed], § 17A.04).

The expert witnesses declared that the stability of unrelated households now approaches the stability of traditional families, that permitting a greater number of unrelated persons to live together in a single-family dwelling would be more reasonable than the present proscription in the ordinance, that one person per bedroom is not overcrowding and that traditional families often have two or more wage earners and a greater income than unrelated individuals. With none of these views controverted by the town, we see scant connection between the restrictions in the ordinance and the problems the town asserts that it seeks to avert. The Oyster Bay ordinance permits unlimited numbers of distantly related persons to live together while it forbids even two persons who are unrelated from living together unless they are both 62 years of age or older. In Oyster Bay, any person can live in a house alone, but it is illegal for that person to live with one or more unrelated individuals as a single housekeeping unit regardless of how close or intimate the bond or bonds may be and even if what they occupy is a large estate property with many bedrooms. But it is legal for any number of distantly related persons to live in a two-bedroom house on a tiny plot (see *State v Baker,* 81 NJ 99, 109-110, *supra*).

The fact that restrictions in the Oyster Bay ordinance are arbitrary and unreasonable does not imply that single-family zoning is an unsound concept. What it does indicate, however, is something that other States and many municipalities in New York recognize — the viability of single-family zoning restrictions no longer depends on biological or legal relationships but on the single housekeeping unit which reflects a certain level of stability (*State v Baker, supra; Berger v State,* 71 NJ 206; *City of Des Plaines v Trottner,* 34 Ill 2d 432, *supra; Brady v Superior Ct.,* 200 Cal App 2d 69). The Court of Appeals has declared that it is proper to zone for single-family use, but when the restriction "require[s] that the relationships in the family unit be those of blood or adoption, then its definition of family might be too restrictive" (*City of White Plains v Ferraioli,* 34 NY2d 300, 305, *supra*). When a group functions as a single housekeeping unit, it

is considered to bear "the generic character of a family unit as a relatively permanent household" (*City of White Plains v Ferraioli, supra,* p 306) and it should be as entitled to occupy a single-family dwelling as its legally or biologically related neighbors (*State v Baker,* 81 NJ 99, 108-110, *supra*). The single housekeeping unit that consists of persons who live and cook together because they are friends, seek companionship or share the need for affordable housing, approximates the living arrangements of a traditional family, and its existence as a normal, stable and permanent unit makes its use of the dwelling compatible with the residential neighborhood in which it is located (*Berger v State, supra*). Indeed, the single housekeeping unit consisting of various numbers of unrelated persons has been recognized as one basis for restricting the use of a single-family dwelling in many municipalities (see, e.g., Babylon Town Ordinance, subpart HH; Brookhaven Town Code, § 85-1; Huntington Town Code, § 62-6; North Hempstead Building Zone Ordinance, § 70-231; Code of Town of Riverhead, § 108-3; Code of Town of Shelter Island, ch 133-1 [b]; Town Code of Southampton, ch 69).

Our holding, then, is that the Oyster Bay ordinance is so arbitrary in its restrictions upon occupancy of one-family dwellings as to constitute a denial of due process (see *Vlandis v Kline,* 412 US 441; *Stanley v Illinois,* 405 US 645). The ordinance is fatally overbroad because it forbids segments of the population — principally the young, the single, and to some extent the elderly — from living in a house with another person or other persons who are not blood, marital or adoptive relatives, a use which poses no threat to the maintenance of the governmental objectives sought to be achieved (see *State v Baker, supra; City of Santa Barbara v Adamson,* 27 Cal 3d 123, *supra*). Those objectives can be achieved constitutionally by prohibiting hotels or rooming houses in residential districts, invoking criminal and general power statutes to control disruptive behavior (*Kirsch Holding Co. v Borough of Manasquan,* 59 NJ 241), imposing single housekeeping unit criteria in zoning ordinances (*City of White Plains v Ferraioli,* 34 NY2d 300, *supra*) and establishing off-street parking requirements (*State v Baker, supra; City of Santa Barbara v Adamson, supra*).

Nor do we imply by our holding that the number of unrelated persons who may live in a single-family home is limitless. Although the number of persons in a conventional family unit tends to be limited for biological reasons (*City of White Plains v Ferraioli, supra,* p 306), *Ferraioli* suggests that a reasonable numerical limitation on occupancy by unrelated persons might

be constitutional, while *Moore v East Cleveland* (431 US 494, *supra*) suggests that limitations on the number of blood related residents might not. Local governments can create zoning standards which permit "a reasonable number of persons who constitute a *bona fide* single housekeeping unit" to occupy one-family houses (see *Berger v State,* 71 NJ 206, 225, *supra; Collins Realty v City of Margate City,* 112 NJ Super 341, 349, *supra*) without infringing due process rights or tarring the young, the single or the elderly with a presumption that in the absence of a genetic or legal relationship between them their presence in one-family houses destroys the peace or character of neighborhoods. We leave for another day and another case the determination of whether numerical restrictions tied to density regulations that refer to floor space or bedroom or bathroom facilities can survive constitutional scrutiny. It is the present we deal with, and we conclude that Oyster Bay's definition of family is an arbitrary device that intrudes upon the due process rights of significant population groups in the community.

Accordingly, the judgment appealed from should be modified by adding a declaration that the provision of section 1 of article 1 of the Building Zone Ordinance of the Town of Oyster Bay defining "family" is unconstitutional insofar as it prohibits two or more persons unrelated by blood, marriage or adoption to live together, by adding a provision that the ordinance is violative of the right of due process under section 6 of article I of the New York State Constitution, insofar as it prohibits occupancy of one-family homes by persons unrelated by blood, marriage or adoption, and by adding a provision enjoining enforcement of the ordinance to the extent it is declared unconstitutional. The judgment should also declare that the ordinance is constitutional insofar as it limits occupancy of one-family homes to members of a single housekeeping unit. As so modified, the judgment should be affirmed, with costs to the plaintiffs.

O'CONNOR, J. (dissenting). My confreres of the majority conclude that provisions of the zoning ordinance are arbitrary and violate due process under the State Constitution. The scholarly and exhaustive opinion of Justice Lazer presents a sharp review of the changing landscape of our times as it carefully weaves its way through the trial testimony of experts for both sides as they discussed the demographic trends which presumably affect the issues before the court.

Plaintiffs' experts noted that the percentage of American households consisting of unrelated persons living together in 1980 has doubled since 1970 and that households consisting of

unrelated persons have been achieving greater acceptance in society. It was their conclusion, therefore, that unrelated persons should be permitted to occupy homes in the same numbers as traditional families would under normal circumstances.

On the other hand, the town's experts found the ordinance to be valid and the town's definition of family to be reasonable, predicated primarily upon the premises that persons who move to the suburbs seek neighborhoods that permit them to pursue and sustain family values.

The majority opinion, citing case law and commentators, statutes and law review articles, expounds in depth on our changing world and concludes that an error of constitutional proportion was committed when the town, in its reallocation of admittedly scarce single-family housing, gave priority to young married couples to the exclusion of unmarried and unrelated couples or groups living together.

All this is heady wine indeed and cannot be lightly discounted. The opinion is interesting, informative and, on first reading, impelling. However, I have great problems in fitting the conclusion reached to the facts recited. As we separate the oranges from the apples, the conclusion appears as a classic *non sequitur* and falls far short of the mark. I therefore respectfully dissent.

Simply stated, the real and only issue is this: Upon this record should not the legislative judgment of the Town Board be sustained?

Let us therefore take a hard look at the facts.

Plaintiffs brought this action for declaratory and injunctive relief as the owners and renters of a four-bedroom, single-family residence in the Biltmore Shores section of Massapequa, in an unincorporated area of the Town of Oyster Bay in Nassau County.

According to their verified complaint, the McMinn plaintiffs entered into a lease in June, 1976 with the other plaintiffs or their predecessors in interest, under which the owners were paid $450 a month rent and the renters apportioned the cost among themselves. The renters were males, aged 22 to 25, who grew up in the Massapequa area and all but one of whom had families living in the town. None of the renters is related to another by blood or marriage. The McMinns bought another house several blocks away in which to reside, and the renters set up what the complaint conclusorily called a "single housekeeping unit". The trial showed that the renters share certain cleaning and housekeeping chores and occasional social activities, but the trial

court noted that their different hours of employment precluded their sharing dinner. The basic reason for their sharing a house after moving out of their family homes was the fact that they could not afford traditional rental units in the area; in addition, they found their "cooperative housing arrangement" with persons of common interests to be an "attractive, congenial and convenient residential life style".

Plaintiffs' residence, however, is located in a one-family zone under section 317 of the Building Zone Ordinance of the Town of Oyster Bay. The ordinance at the time of their entering into a lease defined a "family" as "any number of persons, related by blood, marriage, or legal adoption, living and cooking together on the premises as a single housekeeping unit". Thereafter, an amendment included in this definition any two persons not so related who were 62 years of age or older and living and cooking together as a single housekeeping unit.

In October, 1976, the town's building and zoning inspector notified the McMinns that their use of the residence violated the building zone ordinance, and when the McMinns failed to cure the alleged violations, he issued a summons returnable in the District Court. After adjournments in that court, plaintiffs commenced this action in the Supreme Court, Nassau County, for a declaration that the ordinance was invalid on its face and as applied under the due process and equal protection provisions of the New York Constitution (art I, §§ 6, 11), under the marital status antidiscrimination provisions of section 296 (subd 5, par [a]) of the Executive Law and under the principle of the State's limited delegation to the town of its general police powers.

At the outset, the trial court properly denied the town's motion to dismiss this action as moot when, during trial, it was disclosed that the McMinns had executed an agreement to sell the residence to a woman who planned to live there with her child and an unrelated male companion (cf. *Group House v Board of Zoning & Appeals,* 45 NY2d 266, 271). After taking evidence, the court concluded that plaintiffs had failed to show that the ordinance was unlawfully exclusionary of young, single adults even though approximately 92% of all residential units in the town were zoned as one-family dwellings, even though the demand for traditional apartment units effectively raised their cost so as to exclude young single adults, and even though changing social mores encouraged young, single adults to "prefer * * * to live outside of the family home in the interval between obtaining maturity and marriage" (111 Misc 2d 1046, 1051).

The trial court nevertheless invalidated a portion of the ordinance to the extent that it excluded occupancy by any *two* individuals who were not related by blood or marriage. The court reasoned that the age-based distinction which authorized such occupancy by unrelated individuals age 62 or older was irrational, noting that the town was unique among its neighbors in authorizing this exception although it was not unique in its demographics. The court reasoned further that the Executive Law's provision against discrimination based on marital status precluded enforcement of the ordinance to the extent it purports to prohibit occupancy in a one-family dwelling because the occupants are not married to each other.

Plaintiffs appeal from the resulting judgment to the extent that the court failed, *inter alia,* to declare that the zoning ordinance should not exclude unrelated persons of *more than two in number* from residing together as a single housekeeping unit in a one-family dwelling. Defendants cross-appeal and pray that this court declare the ordinance valid in its entirety.

In my view, the trial court was eminently correct in ruling that the evidence adduced by plaintiffs failed to demonstrate that the zoning ordinance was unconstitutionally applied to them because of its exclusionary nature. By its very definition, zoning is constantly and consistently exclusionary: some uses it sustains, other uses it discourages. The town's decades-old restrictive definition of one-family homes has obviously come under pressure as the need for housing post-World War II children has given way to intragenerational competition between those children who, like plaintiff renters, are now young, single adults "between * * * maturity and marriage" and those children who have entered marriage and have embarked on producing and rearing the next generation. What plaintiffs ask this court to do is to arrogate unto itself the legislative task of reallocating the scarce resource of single-family housing among these two competing groups simply because, despite high demand from both, the town continues to employ a definition of single-family residency that reserves more than 90% of all housing units in the town for traditional family units to the exclusion of "cooperative" housing arrangements like plaintiffs. Such a blatant intrusion upon the legislative prerogative we should not commit (cf. *Matter of Robert Paul P.,* 63 NY2d 233 [change in adoption laws must come from the Legislature]; *Klostermann v Cuomo,* 61 NY2d 525, 535 *et seq.* ["The paramount concern is that the judiciary not undertake tasks that the other branches are better suited to perform"]; *Jones v Beame,* 45 NY2d 402 [action concerning the treatment of animals in city

zoo resulting from city financial crisis properly dismissed as beyond the scope of judicial correction, judicial process should not reorder city priorities]; see, also, *Wells v Rockefeller,* 311 F Supp 48, affd 398 US 901 [function of fixing congressional lines is, and should be, for Legislature; only when their work is violative of fundamental constitutional rights should the courts interfere]; *Becker v Levitt,* 489 F2d 1087, cert den 416 US 985 [courts are extremely reluctant to interfere with the taxing and spending power of State Legislatures]; The Courts: Separation of Powers [Roscoe Pound-American Trial Lawyers Foundation, 1983], pp 22, 94-97).

It is well established that a zoning ordinance, like any municipal law or ordinance, is cloaked with a presumption of constitutional validity (see *Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 344; *Rodgers v Village of Tarrytown,* 302 NY 115, 121). Equally well established is that a party seeking a declaratory judgment to the contrary must prove the ordinance's unconstitutionality beyond a reasonable doubt (see *Northern Westchester Professional Park Assoc. v Town of Bedford,* 60 NY2d 492, 500; *Town of Huntington v Park Shore Country Day Camp,* 47 NY2d 61, 65; *Marcus Assoc. v Town of Huntington,* 45 NY2d 501, 505; *Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11). As the Court of Appeals noted in *Shepard v Village of Skaneateles* (300 NY 115, 118), "[u]pon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts", and more recently in describing this burden, the court stated: "The exceedingly strong presumption of constitutionality applies not only to enactments of the Legislature but to ordinances of municipalities as well. While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality. The ordinance may not be arbitrary. It must be reasonably related to some manifest evil which, however, need only be reasonably apprehended. It is also presumed that the legislative body has investigated and found the existence of a situation showing or indicating the need for or desirability of the ordinance, and, if any state of facts known or to be assumed, justifies the disputed measure, this court's power of inquiry ends. Thus, as to reasonableness, plaintiffs in order to succeed have the burden of showing that 'no reasonable basis at all' existed for the challenged portions of the ordinance" (*Lighthouse Shores v Town of Islip, supra,* pp 11-12).

In the case *sub judice,* plaintiffs have simply failed to carry the heavy burden that the law imposes upon them. The record before this court clearly establishes that a housing scarcity exists in the Town of Oyster Bay and that in the face of this shortage, the town simply chose to favor young married couples, who would beget and rear the very future of the town. It can scarcely be claimed that in making such an allocation of its finite resources the town board had "no reasonable basis at all" in enacting the subject zoning ordinance. Indeed, both the United States Supreme Court and our Court of Appeals have upheld the validity of one-family zoning as a means of protecting the family and its function of creating a stable, healthful environment for childrearing (see *Village of Belle Terre v Boraas,* 416 US 1; *Group House v Board of Zoning & Appeals,* 45 NY2d 266, *supra; City of White Plains v Ferraioli,* 34 NY2d 300). Despite the majority's intimations to the contrary, the "cooperative" housing arrangement sought to be established in this case by a group of young males cannot possibly "bear * * * the generic character of a family unit" under the Court of Appeals gloss upon zoning ordinance provisions that, in essence, seeks to define a "family" in functional rather than biological terminology (*City of White Plains v Ferraioli, supra,* p 306). Unlike a family unit, exemplified by a biological family or a "surrogate family", i.e., a group home with permanent surrogate parents, functioning as a family and supporting family values (see *Group House v Board of Zoning & Appeals, supra,* pp 272-273; see, also, *City of White Plains v Ferraioli, supra,* pp 304-305), the housing arrangement at bar lacks familial structure, cohesion and permanence. Needless to say, this group of four young males lacks the hierarchial structure of a family, and it lacks its cohesion as well. Although the trial court found that the four males shared occasional social activities, it noted that their different hours of employment precluded their sharing dinner — an activity which, surely, is a fundamental attribute of the family unit. Most important, the living arrangement lacks permanence. As the trial court found, one of the original tenants moved out soon after the signing of the lease; in January, 1977, another tenant was replaced; after the action was begun, still another of the original tenants moved out and another person moved in; and, at the beginning of trial, only one of the original tenants remained in the house. When one considers that the McMinns are owners of several other houses within the Town of Oyster Bay, all this has the look of a rooming house operation, rather than a functional family, and it must be remembered that even when speaking of group homes, the Court of Appeals warned that

should such a home "become less of a surrogate family and more of an institution, it might then become an unpermitted use" (*Group House v Board of Zoning & Appeals, supra,* p 274). Nor can plaintiffs draw any support from the Executive Law's prohibition against marital status discrimination. As the majority necessarily concedes, the plaintiffs lack standing to attack the zoning provisions as violative of this law since it is not their marital status that excludes them from having the generic character of a family unit.[*]

The Court of Appeals has likewise upheld the concept of zoning to meet the special needs of a particular group, such as the elderly (see *Maldini v Ambro,* 36 NY2d 481, app dsmd 423 US 993). Again, in a society of finite resources, what is given to one group may require that it be taken from another. In this case, plaintiffs' own exhibit in evidence, a June, 1977 comprehensive plan prepared for the town by its Department of Planning and Development, states that the insufficient supply of small housing units for the elderly, coupled with a large increase in "this valuable and stable segment of the Town's population", made "quality" housing for them "a number one priority". It thus cannot be said that it was irrational or arbitrary for the town to amend its zoning ordinance to permit elderly couples not within the "family" mold to occupy single-family residences.

Accordingly, judgment should be entered in favor of defendants declaring that the building zone ordinance provision challenged in this action is constitutional and valid as to the plaintiffs (see *Group House v Board of Zoning & Appeals,* 45 NY2d 266, 274, *supra*).

BRACKEN and BROWN, JJ., concur with LAZER, J. P.; O'CONNOR, J., dissents and votes to modify the judgment so as to declare that the ordinance in question is constitutional and valid as to the plaintiffs, with an opinion.

Judgment of the Supreme Court, Nassau County, dated August 10, 1981, modified, on the law, by (1) adding a declaration that the provision of section 1 of article 1 of the Building Zone Ordinance of the Town of Oyster Bay defining "family" is unconstitutional insofar as it prohibits two or more persons unrelated by blood, marriage or adoption to live together, (2)

---

* It should be noted that nothing in the building zone ordinance challenged by plaintiffs would appear to prevent any *one* of the plaintiffs from buying or renting the single-family residence in question. Marital status would be completely irrelevant. The issue is the ordinance's restraint on types of *joint* occupancy for residential purposes.

adding a provision that the ordinance is violative of the right of due process under section 6 of article I of the New York State Constitution, insofar as it prohibits occupancy of one-family homes by persons unrelated by blood, marriage or adoption, (3) adding a provision enjoining enforcement of the ordinance to the extent it is declared unconstitutional herein, and (4) adding a provision declaring that the ordinance is constitutional insofar as it limits occupancy of one-family homes to members of a single housekeeping unit. As so modified, judgment affirmed, with costs to the plaintiffs.