CAROLINE WHITE *vs.* HENRY G. MAYNARD.

An oral contract by the keeper of a boarding-house to provide a man and his family for six months with board and with three specified rooms as lodgings, and to light and heat the rooms, is not within the statute of frauds.

CONTRACT. The declaration alleged that the plaintiff was a boarding-house keeper, and on November 26, 1866, agreed with the defendant to furnish him and his family with certain rooms in her house, and provide board, fire and light, until May 1, 1867, at

$75 a week; that the defendant agreed to lodge and board with her accordingly; and that the defendant left on January 12, 1867, and has refused to pay anything since that time. The answer denied that the agreement was for any specified time, and alleged that it was terminable at the option of either party.

At the trial in the Superior Court, before *Dewey*, J., it appeared " that in November 1866, the plaintiff and defendant orally agreed that the plaintiff should provide board for the defendant and his family of four persons; should provide with proper furniture three specified rooms in her house for the use of the defendant as lodgings for him and his family, and should furnish gas to light and furnace heat to warm said rooms while he so occupied them, and that the defendant should pay the plaintiff therefor the entire price of $75 weekly." The plaintiff introduced evidence tending to show " that it was orally agreed between her and the defendant that she would provide said furnished rooms and board for himself and family till May 1, 1867, at the rate of $75 per week; that the defendant would occupy them and board with her until May 1, 1867, and would pay her $75 per week until May 1, 1867; and that the plaintiff was to furnish the necessary heat and gas for the rooms during said time." The defendant introduced evidence tending to show " that no specified time during which he should occupy said rooms and board with the plaintiff was agreed upon."

It further appeared " that the defendant in pursuance of said arrangement entered into possession of the rooms in November 1866, and with his family occupied them and boarded with the plaintiff, paying her $75 weekly, until January 11, 1867, when he and his family left the plaintiff's house and table without notice to her."

The plaintiff testified " that her house was a large one, used as a boarding-house, and that the usual time for letting rooms and ..oard in such houses was in the fall of the year."

The defendant requested the judge to instruct the jury as follows : " If the agreement between the parties was that the defendant should occupy the specified rooms with his family exclusive of all other persons, and that he and his family shoul1

board with the plaintiff, for an entire price per week, until May 1, no action can be maintained on that agreement. If there was such an agreement, by entering upon possession, the defendant became liable as a tenant at will only." The judge declined so to instruct the jury.

At the close of the evidence, before the arguments to the jury, the defendant requested the judge to rule substantially as stated in the first clause of the foregoing request, on the ground that the agreement was within the statute of frauds. The judge said that he should rule against him, and that now that the evidence was all in, he should let the case go to the jury.

The judge instructed the jury that the burden of proof was on the plaintiff to satisfy the jury that the contract alleged in the declaration was made between the plaintiff and the defendant, and that the defendant broke it as alleged in the declaration. The judge gave instructions as to the measure of damages which it is unnecessary to report.

The jury returned a verdict for the plaintiff for $717 damages, and the defendant alleged exceptions to the refusal of the judge to give the instructions asked for. The pleadings were made part of the bill of exceptions.

*T. L. Livermore*, for the defendant.

*E. H. Pierce*, for the plaintiff.

GRAY, J. This is an action by the keeper of a boarding-house against a lodger for breach of an oral contract, by which the plaintiff agreed to provide the defendant and his family of four persons with board, and with three specified rooms as lodgings, in her house, and to light and heat such rooms, from November 26, 1866, to May 1, 1867, at the weekly rate of $75, and the defendant agreed to board and lodge with the plaintiff accordingly.

The defendant at the trial contended that this agreement was for an interest in or concerning lands, within the statute of frauds, and created no more than an estate at will. Gen. Sts. *c.* 105, § 1, *cl.* 4; *c.* 89, § 2. His omission to plead the statute of frauds, not having been objected to at the trial, when the answer might have been amended, cannot now be availed of by the plaintiff, *Jones* v. *Sisson*, 6 Gray, 288. But we are of opinion that the

ruling of the Superior Court was right, and that the agreement declared on was not for any interest in lands.

The opinions of eminent judges, in cases under English statutes giving the elective franchise to the sole occupiers of houses of a certain value, assume it as unquestionable that a mere lodger in the house of another is not a tenant. In *Fludier* v. *Lombe*, Cas. temp. Hardw. 307, Lord Hardwicke held that a man who let rooms to lodgers was still the sole occupier of the house; and said : " A lodger was never considered by any one as an occupier of an house. It is not the common understanding of the word; neither the house, nor even any part of it, can be properly said to be in the tenure or occupation of the lodger." And this definition was cited with approval by Chief Justice Erle in *Cook* v. *Humber*, 11 C. B. (N. S.) 33, 46. So in *Brewer* v. *M' Gowen*, L. R. 5 C. P. 239, it was held that the owner or tenant of a dwelling-house was not a joint occupier with a lodger to whom he let the exclusive use of a bed room and the joint use of a sitting room; and Mr. Justice Willes, after observing that the lodger " clearly was not a joint occupier of the room in which he took his meals," added : " And with respect to the bed room, he clearly had not an occupation as owner or tenant, but only an occupation as lodger."

In like manner, under the English valuation and tax acts, it has been held that, in order to constitute a tenancy, there must be a putting of a lessee into the exclusive occupation of the apartment, and not a mere admission of a common lodger or inmate, the landlord retaining the legal possession of the whole house. *Smith* v. *St. Michael*, 3 E. & E. 383. *Stamper* v. *Overseers of Sunderland*, L. R. 3 C. P. 388. *The Queen* v. *St. George's Union*, L. R. 7 Q. B. 90.

It was decided by Lord Ellenborough, and admitted by Barons Parke and Alderson, that a covenant, in a lease of a coffee-house in London, not to lease or underlet the premises or any part thereof, was not broken by permitting a man to lodge for a year in a particular room, " of which he had exclusive possession," unless under a distinct demise of the room so as to enable him to maintain trespass. *Doe* v. *Laming*, 4 Camp. 73. *Greenslade* v. *Tapscott*, 1 C., M. & R, 55; *S. C.* 4 Tyrwh. 566.

An entire floor, or a series of rooms, or even a single room, may doubtless be let for lodgings, so separated from the rest of the house, as to become in fact and in law the separate tenement of the lessee. *Newman* v. *Anderton*, 2 B. & P. N. R. 224. *Fenn* v. *Grafton*, 2 Bing. N. C. 617; *S. C.* 3 Scott, 56. *Monks* v. *Dykes*, 4 M. & W. 567. *Swain* v. *Mizner*, 8 Gray, 182. But in such a case, as observed by this court in *Swain* v. *Mizner*, he is " a housekeeper, and not a lodger only." In *Monks* v. *Dykes*, it was held that a lodger, occupying one room in a house, the woman who owned the house residing therein and keeping the key of the outer door, had no such occupation of the room that he could maintain trespass against a stranger intruding into the room; and Baron Parke said : " I think that neither in law nor in common sense can a man be described as being in possession of a dwelling-house, when he is a mere lodger."

It has indeed been held in two English cases, cited for the defendant, that agreements to take certain apartments in a house as lodgings at a yearly rent were within the statute of frauds. *Inman* v. *Stamp*, 1 Stark. 12. *Edge* v. *Strafford*, 1 Tyrwh. 293; *S. C.* 1 C. & J. 391. But there is nothing in either of the reports to show that the rooms were in a boarding-house; and, as suggested by the judges in *Wright* v. *Stavert*, 2 E. & E. 721, each appears to have been a case of an agreement, which, if perfected by entry, would have amounted to an actual demise, and would have given the occupant all the possessory rights of a tenant.

In *Wright* v. *Stavert*, on the other hand, it was held that an oral agreement to pay a certain sum yearly for the board and lodging of a gentleman and his servant in a boarding-house, terminable by a quarter's notice on either side, was not an agreement for any interest in real estate; and Chief Justice Cockburn said that to hold such a case to be within the statute of frauds would lead to most absurd and inconvenient consequences. The only distinction between that case and the present is that it states one of the terms of the agreement to have been that " the defendant was to have no exclusive right to or interest in any particular rooms, but to be considered simply as a boarder and an inmate."

But in the similar case of *Wilson* v. *Martin*, 1 Denio, 602, it is implied in the statement of the case, and expressed in the opinion, that the agreement, which was held to create no lease, and no interest in lands, was for the use of particular rooms, as well as for board, in the plaintiff's boarding-house; and Mr. Justice Bronson, in delivering judgment, said: " This was nothing more than an agreement for board and lodging, with a designation of the particular rooms which the defendant was to occupy. It was not a contract for the hiring and letting of real estate. When one contracts with the keeper of a hotel or boarding-house for rooms and board, whether for a week or a year, the technical relation of landlord and tenant is not created between the parties. The lodger acquires no interest in the real estate. If he is turned out of the rooms before the time expires, he cannot maintain ejectment; and while he remains, the hotel-keeper cannot get his pay by distraining for rent in arrear."

In the case at bar, the declaration alleged, and the evidence introduced at the trial tended to prove, an ordinary agreement for board and lodging in the plaintiff's boarding-house, by which the plaintiff, as keeper of the boarding-house, retained the legal possession, custody and care of the whole house and of every room therein. The defendant took, by reason of the fact that the rooms in which he and his family were to lodge were specified in the agreement, no greater legal right in those rooms, than he would, if they had not been so specified, have taken in the house. There was no evidence to warrant the inference of an agreement that the defendant should have any such exclusive possession of the rooms specified as would enable him to maintain any action founded on that possession, either against the plaintiff or against a stranger. The only rights of action between the parties are upon the agreement itself. *Wright* v. *Stavert*, 2 E. & E. 721, 727. *Underwood* v. *Burrows*, 7 C. & P. 26. *McCrea* v. *Marsh*, 12 Gray, 211.

The instructions requested were therefore rightly refused, and no exception appears to have been taken to the instructions given.                                    *Exceptions overruled.*