BENJAMIN L. HALL & another[1] *vs.* ZONING BOARD OF
APPEALS OF EDGARTOWN
(and four consolidated cases[2]).

No. 88-P-1047.

Dukes County. December 8, 1989. - February 6, 1990.

Present: PERRETTA, KAPLAN, & FINE, JJ.

*Zoning*, By-law, Lodging house, Nonconforming use or structure. *Practice,
Civil*, Appeal. *Words*, "Transient residential facility," "Lodging
house."

Certain properties located in two residential zoning districts in the town of
Edgartown, which were leased for the summer months to individuals
who resided on each property and shared it with more than four other
unrelated adults, who paid the tenants for temporary living space on
the premises, were being used as "lodging houses," as that term ap-
peared in the town zoning by-law's definition of "transient residential
facilities," in violation of applicable provisions of the by-law. [253-256]
Plaintiffs who were determined to be using their properties as "lodging
houses," as that term appeared in a town's zoning by-law's definition of
"transient residential facilities," in violation of applicable provisions of
the by-law, failed to show entitlement to protection under G. L. c. 40A,
§ 6, on their claim on appeal that such use of their properties predated
the November, 1982, amendment to the by-law first referring to "tran-
sient residential facilities." [256-259]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment, three on October 7, 1986, and two on November 14,
1986.

[1]Therese M. Hall.
[2]The chief case and two others were brought by Benjamin L. Hall and
Therese M. Hall who jointly own three of the five properties involved in
the action. The fourth case was brought by Therese M. Hall as trustee of
Forsythia Trust which owns another of the properties. The fifth case was
brought by Benjamin L. Hall, Jr., and Brian M. Hall as trustees of the
Courtway Trust which owns the last of the properties.

The cases were heard by *Herbert Abrams*, J., on motions for summary judgment.

*Ronald H. Rappaport* for the defendant.

*Philip E. Magnuson* for the plaintiffs.

FINE, J. The plaintiffs own five pieces of residential property in Edgartown on the island of Martha's Vineyard. Each of the properties was rented for the 1986 summer season for use by a group of unrelated people. In five complaints for judicial review, brought pursuant to G. L. c. 40A, § 17, the plaintiffs challenged decisions of the zoning board of appeals of Edgartown determining that the properties were being used as "transient residential facilities" in violation of applicable provisions of the Edgartown zoning by-law and ordering that the plaintiffs cease and desist from such use. The complaints were ordered consolidated for trial.

The term "transient residential facility" is defined in the by-law in the following way: "Hotel, motels[,] inns or lodging houses with a capacity of more than four guest beds, and time-sharing or time-interval ownership dwelling units." The issue throughout the litigation has been whether the properties were being used as "lodging houses" as that term appears in the zoning by-law's definition of "transient residential facilities." The by-law does not define "lodging house."

A Superior Court judge ruled in the plaintiffs' favor on cross motions for summary judgment. The board claims on appeal that the judge's interpretation of the term "lodging house" was too narrow. We agree that the judge's interpretation of the relevant provisions of the zoning by-law was incorrect although we do not accept the board's proposed interpretation. We explain our understanding of the meaning of the term "lodging house" in the context of the applicable regulations and conclude that the plaintiffs were in violation of those regulations. We find no merit in the plaintiffs' contention, not ruled upon by the judge, that, should they be found to be using their property in violation of the zoning by-law, they are entitled to the protection of G. L. c. 40A, § 6, for their prior nonconforming use.

From the complaints, discovery materials, and affidavits the judge had before him, the following facts emerge. Five properties are involved: four single family residences and one duplex which contains two dwelling units. All are located in either an R-5 or an R-20 residential district of Edgartown. "Transient residential facilities" are prohibited in R-20 districts and permitted in R-5 districts only with a special permit. The plaintiffs have neither applied for nor received a special permit to use any of the properties as a "transient residential facility." In an R-20 district, apart from single family use, and other described uses not relevant to this case, property may be used for "[t]he leasing of rooms with not more than four boarders by a family residing on the premises . . . ." Although R-5 districts are generally less restrictive than R-20 districts,[3] there is no provision for leasing rooms as of right. With a special permit, however, a property owner in an R-5 district may "[c]onver[t] an existing residential structure to a transient residential facility . . ." or use the property for "[t]he taking of boarders or the leasing of rooms by a family residing on the premises . . .".

As was their custom for a number of years, the plaintiffs entered into leases for each of the four single family houses and each unit of the duplex for the 1986 summer season. Each of the leases provided for a set amount of rent to be paid for the entire dwelling, which was to be provided with furniture but not linen. In one lease there was one lessee; in four leases there were two lessees; and in one lease there were four lessees. The plaintiffs knew, however, at least with respect to five of the six leases, that persons, typically college students, in addition to the named lessees, would be occupying the premises and sharing the rent with the lessees. The health inspector testified at the hearings before the board of appeals that the number of occupants he and the building inspector observed in the properties ranged from six to twelve. The plaintiffs admitted occupancy of one of the

---

[3]In an R-20 district, the minimum lot size is a half acre. In an R-5 district, two-family dwellings are permitted, and the minimum size lot is 5,000 square feet.

dwelling units by at least ten persons, one by nine, one by eight, one by seven, and one by five. The plaintiffs maintained that no one except the named lessees occupied the remaining property. On one of the leases, five names were listed as "others to occupy." With respect to five of the six leases, the plaintiffs admitted that occupancy by more than four unrelated persons was contemplated.

Prior to the summer of 1986, Edgartown's building inspector and health agent jointly issued "Group House Regulations for the Town of Edgartown" providing that " '[g]roup houses,' in which the owner-occupants or the principal renters in turn rent out beds to more than four additional persons, are considered [lodging houses, and therefore] transient residential facilities."[4] In July of 1986, the building inspector, after inspecting the plaintiffs' properties, ordered the plaintiffs to cease and desist from operating lodging houses in violation of the by-law. The plaintiffs appealed to the board of appeals which, in each instance, upheld the decision of the building inspector. Then the plaintiffs took their cases to the Superior Court. The judge ruled that the meaning of the term "lodging house" must be derived from G. L. c. 140,

---

[4]The regulation, a copy of which was appended to the affidavit of the building inspector, provided:

> "For your protection in renting a house, and for the health and safety of occupants of houses in Edgartown, you should be aware that 'group houses' are carefully regulated in the Town of Edgartown. These regulations will be strictly enforced throughout the Town for the protection of all inhabitants. The regulations are summarized below.
>
> 'Group houses,' in which the owner-occupants or the principal renters in turn rent out beds to more than four additional persons, are considered transient residential facilities. The Edgartown Zoning-By-laws (Section II-19) define transient residential facilities as 'Hotel, motel inns or lodging houses with a capacity of more than four guest beds, and time-sharing or time-interval ownership dwelling units.' Group houses as defined above are considered lodging houses within this definition and are regulated as such . . . [In its final paragraph, the regulation lists Edgartown's various zoning districts and states, with respect to each one, whether 'transient residential facilities' are permitted]."

In our opinion, the regulation exceeds, in some respects, the prohibitions in the zoning by-law.

§ 22, as amended by St. 1973, c. 481,[5] and, relying upon *White* v. *Maynard*, 111 Mass. 250, 253 (1872), he ruled that a "lodger," as opposed to a "tenant," is one who has no interest in the real estate. "Thus, [the judge concluded,] if the leases under which the [plaintiffs] rented the properties can be seen as valid conveyances of a tenancy interest in the properties, the houses were not 'lodging houses' within the legal definition of that term." As each of the six leases created a valid tenancy, the judge determined that none of the properties was being used as a lodging house during the term of the lease.

1. *Were the properties being used as "lodging houses"?* The precise issue of the validity of the cease and desist orders for the 1986 tenancies is, in 1990, no longer a live one. The general issue of the propriety of such arrangements, however, is one that is almost certain to repeat itself annually. Instead of focusing our attention, therefore, on the particular aspects of each of the leases, we examine the basic characteristics of the arrangements described in the materials before us. Thus, we assume, although as to at least one of the leases before us the assumption is not correct,[6] that the plaintiffs' practice with respect to a piece of residential property they own is to enter into a lease for the summer months with a few individuals who reside on the property and who share it with more than four other unrelated adults who pay the tenants for the right to reside on the premises.

The judge erred, we think, in basing his determination that there was no "lodging house" use solely on the fact that each property was leased to tenants who acquired the right to full

---

[5]" 'Lodging house,' as used in sections twenty-two to thirty-one, inclusive, shall mean a house where lodgings are let to four or more persons not within the second degree of kindred to the person conducting it, and shall include fraternity houses and dormitories of educational institutions, but shall not include dormitories of charitable or philanthropic institutions or convalescent or nursing homes licensed or group residences licensed or regulated by agencies of the Commonwealth under section seventy-one of chapter one hundred and eleven or rest homes so licensed."

[6]The 1986 summer lease for 85 Seventh Street is with four lessees, and there is no indication that more than two additional persons actually resided there.

possession of the premises for the term of the lease. To resolve the issue it was necessary for the judge to look beyond the provisions of the leases and to determine whether those in possession, the tenants, were using the leased premises as "lodging houses." See *Commonwealth v. Jaffe*, 398 Mass. 50, 56 n.8 (1986). The tenants, for purpose of determining whether there was compliance with the zoning regulations, stood in the shoes of the owners.

To determine whether the tenants were in compliance, we must first decide, as a matter of statutory construction, the meaning of "lodging house." See *Framingham Clinic, Inc. v. Zoning Bd. of Appeals of Framingham*, 382 Mass. 283, 290 (1981). Terms used in a zoning by-law should be interpreted in the context of the by-law as a whole and, to the extent consistent with common sense and practicality, they should be given their ordinary meaning. See *Rando v. Board of Appeals of Bedford*, 348 Mass. 296, 297-298 (1965). The use of the plaintiffs' property by the tenants fits, in our view, well within the concept of "lodging houses," so construed.

What the owners contemplated the tenants would do, and what they in fact did, was to enter into agreements with other persons whereby, in exchange for compensation, temporary living space was provided. The ordinary meaning of "lodging house" is broad enough to include such an arrangement. Webster's Third New International Dictionary 1329 (1971) defines a "lodger" as "one who by agreement with the owner of housing accommodations acquires no property, interest, or possession therein but only the right in accordance with the agreement to live in and occupy a room or other designated portion therein that still remains in the owner's legal possession." See Black's Law Dictionary 848 (5th ed. 1979). The Supreme Judicial Court has held, similarly, that the critical distinguishing feature of a "lodger" is his lack of interest in real property and his contractual relationship with the owner. See *White v. Maynard*, 111 Mass. at 253. Compare *Selvetti v. Building Inspector of Revere*, 356 Mass. 720 (1969). Compare also *Gulfport v. Daniels*, 231 Miss. 599, 605 (1957); *Township of Ewing v. King*, 69

N.J. 67, 68-69 (1976); *Mercer Island* v. *Steinmann*, 9 Wash. App. 479, 484-485 (1973). We see nothing to the contrary in the statutory definition of "lodging house" (G. L. c. 140, § 22) on which the judge said he relied.

Moreover, looking at the by-law as a whole, it is a fair assumption that the drafters intended to prohibit, at least without a special permit, a use which they did not expressly permit as of right in a particular zoning district. Because owners, or tenants who reside on the premises, are expressly permitted to have up to four boarders, it would be reasonable to construe the by-law as prohibiting, at least without a special permit, having more than four boarders. Such an analysis suggests, in the event of a tenancy, that a "lodging house" exists under the zoning by-law on premises occupied by the tenants and more than four additional unrelated persons who enter into agreements with the tenants and pay them for the right to short-term occupancy of living space. We recognize that zoning is not concerned with legal relationships but with how property is used. Compare *CHR General, Inc.* v. *Newton*, 387 Mass. 351, 356 (1982). Typically, however, occupancy in the manner contemplated in the plaintiffs' leases would result in use of the property which is different from that which is ordinary and expected in a single family structure.

The board, in its argument on appeal and consistent with the "Group House Regulations for the Town of Edgartown" adopted by the building inspector and the health agent, would have us construe *any* rental of property in an R-5 or an R-20 district to more than four unrelated persons as the creation of a "transient residential facility" and, therefore, a violation of Edgartown's zoning by-law. Such a rental, however, may well be a permitted use. In the R-5 and R-20 districts the by-law permits, in addition to other uses not in issue, the use of a building as a "single family detached dwelling . . . ." We see nothing in the by-law, except possibly the term "single family," that expressly prohibits rental of a structure in those zoning districts to a group of more than four unrelated persons, each of whom would be acquiring a

right, as against the owner, to possess the entire premises for the entire term of the tenancy. The by-law does not define "family." Given contemporary realities, in the absence of a definition of "family" or a provision restricting "single family" use to occupancy by persons related by blood, marriage, or adoption, the term "single family use" is broad enough to include at least occupancy of a dwelling by a reasonable[7] number of unrelated people who choose to share a single family structure, living together as a single housekeeping unit in a family-like situation. Compare *Commonwealth* v. *Jaffe*, 398 Mass. at 56-57 (1986).[8] Thus, contrary to the argument of the board, those who become tenants of the owners, even if they number more than four, are not necessarily "lodgers."[9]

2. *Is the plaintiffs' use of the properties as "lodging houses" protected by G. L. c. 40A, § 6?* The plaintiffs contend that if the use of any of their properties should be deemed to be use as a "lodging house" and, hence, as a "transient residential facility," such use predates the November, 1982, amendment to the Edgartown zoning by-law first

---

[7]What is reasonable may depend, in part, upon the size of the dwelling.

[8]A zoning ordinance limiting the number of unrelated persons living together in residential districts survived a Federal equal protection and First Amendment challenge in *Belle Terre* v. *Boraas*, 416 U.S. 1 (1974), although, later, the Supreme Court required that, for such purposes, municipalities not unduly restrict the meaning of "family." See *Moore* v. *East Cleveland*, 431 U.S. 494, 511 (1977). State courts are split on the validity of such restrictions. Some interpret their State law in accord with *Belle Terre*. See *Hayward* v. *Gaston*, 542 A.2d 760, 768-769 (Del. 1988); *Penobscot Area Housing Dev. Corp.* v. *Brewer*, 434 A.2d 14, 21 (Me. 1981); *Durham* v. *White Enterprises, Inc.*, 115 N.H. 645, 649 (1975). Others, construing regulations under State constitutions, view such restrictions unfavorably. See *Santa Barbara* v. *Adamson*, 27 Cal. 3d 123, 134 (1980); *Township of Delta* v. *Dinolfo*, 419 Mich. 253, 269 (1984); *McMinn* v. *Town of Oyster Bay*, 105 A.D.2d 46, 56-59 (1984), aff'd 66 N.Y.2d 544, 551 (1985). See also Annot., 12 A.L.R. 4th 238 (1982).

[9]Absent amendment of the zoning by-law, should more than four tenants sign a summer lease and share the premises without setting up a "lodging house," as we have construed that term, whether a zoning violation exists will depend upon whether the tenants live together as a single housekeeping unit in a family-like situation. We acknowledge that the test is not easy to apply.

referring to "transient residential facilities." Thus, they claim, they are entitled to protection under G. L. c. 40A, § 6.[10] The plaintiffs have the burden of showing that they are entitled to the protection of the statute. See *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. 205, 223 n.11 (1982), and cases cited. *Building Inspector of Chatham* v. *Kendrick*, 17 Mass. App. Ct. 928, 929 (1983). They must show, first, that the prior use was lawful. See *Selectmen of Wrentham* v. *Monson*, 355 Mass. 715, 716 (1969). In addition, whether a current use is a protected nonconforming use depends upon "[w]hether the use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect . . . [w]hether there is a difference in the quality or character, as well as the degree, of use . . . [and] [w]hether the current use is 'different in kind in its effect on the neighborhood.' " *Cape Resort Hotels, Inc.* v. *Alcoholic Licensing Bd. of Falmouth*, 385 Mass. at 212, quoting from *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966).

The plaintiffs have failed to show entitlement to protection under G. L. c. 40A, § 6. All they have established in the

---

[10]General Laws c. 40A, § 6, as appearing in St. 1975, c. 808, § 3, provides, in relevant part:

"Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing on such ordinance or by-law required by section five, but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of said public hearing, to any reconstruction, extension or structural change of such structure and to any alteration of a structure begun after the first notice of said public hearing to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood."

record before us is that, before the 1982 zoning amendment, some of the properties were rented to groups of more than four unrelated people. According to one affidavit from a previous owner of one of the properties, he rented it for the summer of 1982 to a group of five tenants, all of whom signed the lease, and a total of ten persons, including the lessees, occupied the house. As to the remaining properties, there are no descriptions of the prior tenancies or details about occupancy, and there is no indication whether the tenants contracted with others to provide them with living space on the premises.

Apart from other requirements for establishing a valid prior nonconforming use, the plaintiffs have not shown that any prior use of their properties, which under the present by-law would be unlawful, was lawful before November of 1982. The plaintiffs have not produced the applicable zoning by-law as it existed at the time of the amendment. Thus, the record is inadequate to enable us to pass on this issue. *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 8 (1981). But even assuming that before the 1982 amendment the by-law was in its present form except for the "transient residential facility" references, the plaintiffs would not prevail. Consistent with our ruling on the intent of the by-law, the "transient residential facilities" provisions may be enforced against the plaintiffs for practices such as those involved in this appeal only if there is a showing by the town that the plaintiffs' tenants, for compensation, agreed to allow more than four other unrelated persons to occupy living space on the premises. Such additional occupants would be "lodgers" or "boarders." The zoning by-law, even apart from the "transient residential facilities" provision, does not permit a "family" in occupancy, whether owners or renters, to have more than four boarders in an R-20 district. The zoning by-law appears not to permit *any* boarders without a special permit in an R-5 district, but certainly it does not as of right permit more than four boarders. Thus, as to any use which would at the present time be in violation of the "transient residential facility" provisions, any prior similar use would

have been illegal. In particular, the use during the summer of 1982 of the one property described in the former owner's affidavit would have been violative of the zoning regulations.

Accordingly, we vacate four of the five judgments for the plaintiffs and order entry of judgments in those cases (Civil Action Nos. 2525, 2527, 2540, and 2541) affirming the decisions of the zoning board of appeals of Edgartown. In the remaining case (Civil Action No. 2526), in which the defendants have not shown any violation, the judgment of the Superior Court is affirmed.

*So ordered.*