Toomey, J.

INTRODUCTION

This matter is before the court on the parties’ cross motions for summary judgment. Plaintiffs, Mohawk Drive Corporation and Kevin Crowley (collectively, “Mohawk”), appeal a decision of the defendant members of the Leominster Board of Appeals (“Board”), upholding defendant Leominster Building Inspector Edward M. Cataldo (“Cataldo”)’s denial of Mohawk's request for a building permit. Mohawk had sought the permit to erect a cellular communication tower on property within the City’s Industrial Zoning District.
Mohawk, in support of its motion for summary judgment, argues that construction of a cell tower was permitted as of right under the zoning scheme in effect when the Board issued its decision in January 2000. The Board opposes Mohawk’s motion and seeks summary judgment for itself, contendingboth that cellular towers were not permitted uses in the Industrial Zone at the time of the Board’s decision and that Mohawk’s permit application failed to include the environmental permits required to build in a Floodplain District.
For the following reasons, Mohawk’s motion is DENIED and the Board’s motion is ALLOWED.

BACKGROUND

Mohawk owns real estate at 25 Mohawk Drive in Leominster (“property”). The property is in a district classified by the zoning ordinance for the City of Leominster as “Industrial.” On November 22, 1999, Mohawk requested from Cataldo a building permit for a cell tower of a height of approximately 200 feet and associated foundation and equipment buildings on the property. On the same date, the City Council, at a regularly scheduled public meeting, proposed and forwarded to the Planning Board an amendment to the Zoning Ordinance to “regulate the siting of cellular towers” (“Amendment”). The Amendment requires individuals seeking to construct a cellular tower in Leominster to obtain a special permit from the Planning Board.
Shortly after he received Mohawk’s permit application, Cataldo issued a written rejection, stating that construction of a 200-foot radio tower was not a permitted use in the Industrial Zone pursuant to “City of Leominster Zoning Ordinance, Chapter 22, Article II, Section 22-27(a) Table of Uses.” On December 6, 1999, Mohawk appealed Cataldo’s decision to the Board on the grounds that the proposed activity conformed to the provisions of the Ordinance. On January 19, 2000, the Board conducted a public hearing and voted 3-2 to uphold Cataldo’s denial of the permit.
On January 16, 2000, three days before it heard plaintiffs’ appeal, the Planning Board published notice of a hearing on the proposed Amendment. In May 2000, the City Council adopted the Amendment and its requirement of a special permit from the Planning Board for construction of any cellular facility. Mohawk argues that, because the Amendment was not in effect at the time it applied for a building permit and because telecommunications towers were not a prohibited use under the Ordinance, he was entitled to approval of his permit by Cataldo and the Board as a matter of right.
*85 Section 22-26 of the Leominster Zoning Ordinance provides: “Manufacturing and any and all other uses shall be permitted except that the following uses are specifically prohibited.”[3] (Emphasis added.) The Ordinance enumerates 22 prohibited uses, none of which includes construction of a cellular tower.
The issue at bar is the proper interpretation of the phrase “any and all other uses.” Mohawk argues that, pursuant to the italicized language, construction of a cellular tower is a permissible use because it is not one of the 22 prohibited uses expressly enumerated by the statute. The Board responds that plaintiffs were not entitled to a permit because Mohawk’s interpretation of the ordinance is incorrect as a matter of law and because Mohawk failed to obtain required environmental special permits at the time of the Board’s review.[4]
Pursuant to G.L.c. 40A, §6, a zoning amendment does not apply to “a building permit issued before the first publication of notice of the public hearing on such ordinance.” Mohawk argues that it applied for the building permit in November of 1999 and the Board did not publish a notice of the public hearing on the proposed amendment until January of 2000. Therefore, Mohawk contends, if Catalado had not erroneously denied it a building permit, the permit would have issued before the Board published notice of the hearing on January 16, 2000, and the telecommunications Amendment would not apply to Mohawk’s request for a permit. The nub of Mohawk’s argument is that it was entitled, as a matter of right, to build a cellular tower in the Industrial Zone on November 22, 1999, when it applied for a building permit. Given the plain language of the applicable statute and zoning ordinance, Mohawk’s argument is unpersuasive.

DISCUSSION

Summary judgment is granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). At bar, there are no fulcrum facts in dispute and we may proceed to summary judgment by interpretation of the Ordinance.
G.L.c. 40A, §6 provides, in pertinent part: “A zoning ordinance or bylaw shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or a special permit issued before the first publication of notice of the public hearing on such ordinance or by-law.” Mohawk contends that he was entitled to a building permit because the Board had not issued its first notice of hearing on the Telecommunications Amendment when, on November 22, 1999, it applied for the permit.
In support of its contention, Mohawk relies on Nyquist v. Board of Appeals of Acton, 359 Mass. 462 (1971), in which a Planning Board approved development of a shopping center on a site zoned for retail use. Although the site was subsequently re-zoned to prohibit retail use, the developer was allowed to proceed because the development plan had been approved before publication of the first advertisement for a public hearing on the amendment to re-zone the site. Thus, in Nyquist, the Court held that construction of a department store on the site was proper because the zoning by-law, later amended but in effect when the development plan was approved, permitted retail use.
Nyquist is, however, distinguishable from the case at bar. At the time the Nyquist Planning Board approved the development plan, the clear language of the zoning ordinance permitted retail use. At bar, no such clarity of permit exists. Although Mohawk assumes that it was entitled to a building permit for a telecommunications tower in the Industrial zone, the clear language of the Ordinance in effect at the time of Mohawk’s application belies that assumption. For the reasons stated infra, the Ordinance in effect on November 22, 1999, did not entitle Mohawk to the permit it sought, in contrast to the Nyquist ordinance which did so entitle its developer.

Construction of the Ordinance

At bottom, Mohawk argues that the phrase, “any and all other uses,” appearing in the Ordinance includes any use not specifically prohibited by one of the 22 exceptions. Therefore, Mohawk contends, because a cell tower is not enumerated as one of the 22 prohibited uses, Mohawk was entitled to a permit as of right. The Board counters that the permitting phrase must be read strictly in accordance with its terms, to wit, “manufacturing and any and all other uses,” to the end that only manufacturing and similar uses are allowed by the Ordinance.[5]
The meaning of a phrase in a zoning by-law is a question of law. See Building Com’r. v. Dispatch Communications, 48 Mas.App.Ct. 709, 713 (2000). “Terms used in a zoning by-law should be interpreted in the context of the by-law as a whole and, to the extent consistent with common sense and practicality, they should be given their ordinary meaning.” Hall v. Zoning Bd. of Appeals, 28 Mass.App.Ct. 249, 254 (1990). Relying on this principle, Mohawk argues that the phrase “any and all other uses” allows any use not specifically prohibited in the Ordinance. The cases are clear, however, that the ordinary meaning of a phrase will not apply if it does not make sense in the context of the by-law as a whole. Id.
Where possible, a court must construe legislation so as to avoid rendering another portion of the legislation meaningless. See Adamowicz v. Town of Ipswich, 395 Mass. 757, 760 (1985). Here, under Mohawk’s proposed construction, land within the Industrial Zone could be used for any conceivable pur *86 pose except one of the 22 specifically prohibited uses. That interpretation would render other portions of the Ordinance superfluous. For example, Section 22-26(b) lists certain uses allowed as of right in the Industrial District.[6] If, as Mohawk suggests, “any and all” other uses except the 22 enumerated exceptions were allowed, there would be no need for other provisions, such as Section 22-26(b), to allow certain uses as of right.
Moreover, the Ordinance provides in Section 22-26(c)(1) that any uses allowed within the City’s Commercial or Business Districts are expressly prohibited in the Industrial District. Pursuant to Section 22-23(b)(2), “television or radio broadcasting studios or stations” are allowed as of right in the Business B District. Similarly, pursuant to Section 22-24(b)(5) and (23), such uses are permitted by right in the Commercial District. Finally, Sections 22-23(c) and 22-24(c) permit by special permit any use “similar in character” and “effect” to those allowed by right in the Commercial or Business Districts. Thus, a telecommunications tower, which is similar in character and effect to a radio or television transmitting station, would be allowed by special permit in the Commercial or Business Districts and, consequently, would be one of the uses specifically prohibited in the Industrial District pursuant to 22-26(c)(l).
Accordingly, this court concludes that the permit sought by Mohawk was barred by the Ordinance’s specification that only manufacturing and like uses were to be permitted. This conclusion is buttressed by the subsequent amendment of the Ordinance that clarified the definition of permitted uses. See fn3, supra.

Environmental Permits

The site for which Mohawk sought a permit to build a cellular tower is located in a Floodplain District. Pursuant to Section 22-37(c) of the Leominster Zoning Ordinance, no new use or structure is permitted within a Floodplain District without a special permit from the City Council. Because Mohawk did not obtain such a permit,[7] Cataldo could not approve its request for a building permit. Cataldo did not serve as plaintiffs counsel, and had no obligation to inform plaintiffs that a special environmental permit was required. Under the circumstances at bar, however, the issue of the absence of the environmental permit is of little import because Mohawk’s proposed use of the site was not permitted- within the Industrial Zone.

CONCLUSION

The zoning ordinance in effect at the time of Mohawk’s application for a building permit did not allow construction of a cellular tower in the Industrial Zone. In addition, Mohawk failed to submit the environmental permits required to build in a Floodplain District. Accordingly, there are no genuine issues of material fact, Mohawk’s application permit was, as a matter of law, properly denied, and the Board is entitled to summary judgment.

ORDER

For the foregoing reasons, it is hereby ORDERED that plaintiffs’ motion for summary judgment is DENIED and defendants’ motion for summary judgment is ALLOWED.

 Defendants submit that the language of the statute was amended in 1991 to provide “Manufacturing, assembly, processing and any and all other uses.” (Emphasis added.)

 Because Cataldo determined in the first instance that the proposed use was not permitted within the Industrial Zone, he did not reach the issue of whether plaintiffs had failed to obtain the special permit required for construction in a Floodplain District.

 The Board invokes the doctrine of ejusdem generis, arguing that the general term (any and all uses) must be limited by the specific term (manufacturing) which precedes it.

 The Ordinance provides that land in the Industrial district may be used for any use permitted in the Limited Industrial districts, professional office buildings, hotels and warehouses.

 Plaintiffs father had applied for such a special permit several years earlier, but that application was voluntarily withdrawn in or about January of 1997.