BUILDING INSPECTOR OF CHATHAM *vs.* MARION L. KENDRICK & another.[1] December 1, 1983. *Evidence,* Hearsay, Public record. *Zoning,* Nonconforming use or structure.

This action, commenced in the Superior Court on June 11, 1980, by the building inspector of Chatham, seeks to enjoin the Kendricks from conducting a "garage . . . for the repair . . . of heavy equipment and related machinery" on Mrs. Kendrick's property situated (under the town zoning by-law) in a general business zone. A special permit is required ordinarily for such a use. After trial, Kendrick's operation was enjoined except as it came within the terms of a 1974 special permit issued to the Kendricks by the town's zoning board of appeal (the board). That permit specified that an addition to an existing building would be "used as a blacksmith shop . . . making ornamental iron work, . . . light decorative iron accessories, and the like," and that repairs "to heavy equipment or machinery would not be carried on as any major portion of the proposed business use."

In August, 1978, the building inspector wrote to Kendrick, referring to "complaints concerning the heavy equipment parked . . . on the property" and ordered that he cease work on such equipment other than as allowed

---

[1] Douglas A. Kendrick.

in the 1974 permit. He was asked to "appeal for the expansion of a non-conforming use." In October, 1978, Kendrick did apply for a special permit for "use of the premises as a garage . . . for the repair . . . of trucks and related machinery." The board denied this application in December, 1978. There was no appeal from this decision.

On January 30, March 20, and June 11, 1980, the building inspector directed the Kendricks to desist from further work in violation of the 1974 permit. In their answer to the complaint, the Kendricks asserted that the repairs done by Kendrick on construction equipment and commercial vehicles constituted "a nonconforming use established prior to the existence of zoning by-laws in . . . Chatham," originally adopted by the town in 1954.

The trial judge heard this case in June, 1982, in part upon a stipulation of certain facts and in part upon conflicting evidence about Kendrick's past use of the premises. The burden is upon Kendrick to prove his defense that a nonconforming use existed. See *Colabufalo* v. *Public Bldgs. Commr. of Newton*, 332 Mass. 748, 751 (1955). It was not contended by Kendrick that he, at the time of trial (mid-1982), was not (1) making substantial repairs to commercial vehicles including bulldozers, graders, backhoes, and plows and (2) storing such vehicles on the premises until such repairs could be completed.

The principal questions argued relate to the trial judge's admitting in evidence, over objection on behalf of Kendrick, the board's minutes of its meetings on January 9, 1974, and on November 29, 1978, as well as other documents then considered by the board. There was testimony at trial by Kendrick (and by witnesses called in his behalf) that Kendrick, although in regular employment for others prior to and immediately after 1954, did repair work on the premises on "nights, Sundays, holidays, [and] days off," working thirty-five to sixty hours a week depending on the "volume of work and the type of jobs."

In his findings, rulings, and order for judgment, the judge relied on the minutes of the hearings before the board as showing (a) that in 1978 Kendrick or his counsel had "indicated [to the board] that the repair business had commenced on a part-time basis in 1965 . . . after the enactment of the zoning by-law," and (b) that no claim was made at either hearing that the repair business was a pre-1954 nonconforming use, a contention which the judge clearly regarded as first asserted by Kendrick in the present action. With respect to the testimony of Kendrick and other witnesses about his use of the locus, before and shortly after 1954, the judge stated merely that, on all the evidence, he could not "conclude that the . . . Kendricks have sustained their burden of proving that the repair of equipment and machinery was an established use of the premises prior to . . . 1954." The judge did not state that he did not believe Kendrick and the witnesses called by him to show a pre-1954 nonconforming use. Instead, the judge referred to a statement in the minutes of the 1978 hearing, which was in

substance, "Kendrick has operated his shop," on the basis of making repairs to what he considers to be light machinery "at this location at least on a part-time basis since 1964." The judge in effect used this somewhat ambiguous statement in the 1978 minutes as establishing the truth of what was reported and as the basis for his conclusion "that the repair business had commenced on a part-time basis in 1965." It is not clear from the minutes to whom the statement was attributed by the author of the minutes, although it was probably attributed to Kendrick's then attorney, Mr. Hammatt. Although present in court, Mr. Hammatt was not called as a witness to state what his contentions had been in 1978. There was improper and excessive use of the minutes of the 1978 hearing which requires reversal. The judge's use of the minutes was excessive in that he used them as substantive evidence that Kendrick or his attorney made before the board the statements attributed to one or the other of them.

General Laws c. 40A, § 15, inserted by St. 1975, c. 808, § 3, provides that the "board shall cause to be made a detailed record of its proceedings, indicating the vote of each member upon each question . . . and setting forth clearly the . . . reasons for its decision and of its official actions, copies of all of which" are to be filed with the "town clerk and shall be a public record." See also the open meeting law (G. L. c. 39, § 23B, inserted by St. 1975, c. 303, § 3), reading in part (then and now despite various amendments), "A governmental body shall maintain accurate records of its meeting, setting forth the date, time, place, members present or absent and action taken at each meeting, including executive sessions. The records of each meeting shall become a public record and be available to the public," subject to a proviso not here relevant. General Laws c. 66, § 5A, as amended by St. 1982, c. 83, most recently provided that the public records of meetings there mentioned "need not include a verbatim record of discussions at such meetings."

The public records exception to the hearsay rule has been discussed in the Massachusetts decisions collected in Liacos, Handbook of Massachusetts Evidence 266, 340-346 (5th ed. 1981 & Supp. 1983), and Hughes, Evidence §§ 611-612 (1961 and Supp. 1981). See also 5 Wigmore, Evidence §§ 1631-1632 (Chadbourn rev. 1974); McCormick, Evidence §§ 315-317, 319-320 (2d ed. 1972 and Supp. 1978). We need not determine whether there has been some expansion of this common law exception in recent years. See *Selectmen of Stockbridge* v. *Monument Inn, Inc.*, 14 Mass. App. Ct. 957 (1982); Proposed Massachusetts Rules of Evidence 104 and 803(8), as published in July, 1980. See also the extent to which administrative documents were considered in *Shuman* v. *Aldermen of Newton*, 361 Mass. 758, 767-768 (1972). Compare *Amory* v. *Commonwealth*, 321 Mass. 240, 252-253 (1947); *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 319 (1973). Proposed rule 803(8), if it had been adopted, would have made admissible a wide range of public records

"unless the sources of information or other circumstances indicate lack of trustworthiness."

We think that the statutes just cited make public records, such as those required to be kept by the board, admissible to prove the specific matters which the statutes require expressly to be recorded, e.g., the date of each meeting, the motions made, the vote upon each motion, the board members present and absent, and the reasons formally stated for each decision. Even findings by a zoning board, however, have no evidentiary weight. See *Devine* v. *Zoning Bd. of Appeals of Lynn,* 322 Mass. 319, 321 (1955); *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555 (1962). See also *Lawrence* v. *Board of Appeals of Lynn,* 366 Mass. 87, 89 (1957). We do not decide whether such minutes may be used for some other purposes when supplemented by the testimony of persons present at the meetings recorded, or of the person who prepared the minutes, particularly if the minutes are shown to have been complete and prepared on the basis of a verbatim transcript or tape recording.[2] We do not suggest that the Kendricks' 1974 and 1978 applications to the board may not be evidence of the fact that there was an application for relief, unnecessary if the Kendricks had the benefit of a nonconforming use, without alleging the existence of that use. Kendrick's own testimony about the 1978 hearing was too ambiguous to amount to an admission that the minutes were accurate.

We think that the minutes of the 1974 and 1978 meetings of the board are not admissible under G. L. c. 233, § 78, upon the facts reflected in this record, to prove the truth of the evidence before the board recorded in the minutes. See the discussion in *Wingate* v. *Emery Air Freight,* 385 Mass. 402, 405-407, 408-410 (1982), and cases cited.

Upon a new trial, if evidence concerning a nonconforming use is presented, the trial judge should make explicit findings concerning whether such a pre-1954 use existed. It will be open on a new trial for the judge to consider (a) whether there has been excessive expansion of any nonconforming use since 1954 (see the discussion in *Powers* v. *Building Inspector of Barnstable,* 363 Mass. 648, 652-653 [1973], and *Gamache* v. *Acushnet,* 14 Mass. App. Ct. 215, 221-222 [1982]); and (b) whether and to what extent the Kendricks' failure to raise before the board in 1974 and 1978 the issue of nonconforming use, which they could then have raised, may be binding upon them in a de novo judicial review of the board's action in the present case. See Restatement (Second) of Judgments § 83 (1982).                                              *Judgment reversed.*

[2] The trial judge seems to have required no adequate inquiry from any member or employee of the board (as opposed to the town clerk as custodian of the board's records who had no knowledge of their accuracy) concerning the trustworthiness of the minutes. Without adequate support in the evidence, the building inspector's brief inappropriately asserts that the minutes were prepared with the assistance of a tape recording of the proceedings at each meeting.

*Russell N. Wilkins* for the defendants.
*Frank J. Shealey,* Town Counsel, for the plaintiff.