Gershengorn, J.
Plaintiff, Ralph Gaudet ("Gaudet”) is the Building Inspector for the City of Waltham. Defendant, Antonio Ridino (“Ridino") is the owner of a building located at 150 Brown Street in Waltham. The building is located in a “Residence B” zoning district which only allows single-family or two-family dwellings. Gaudet claims Ridino is illegally maintaining a five-unit multifamily dwelling. Gaudet seeks enforcement of the “Residence B” district zoning ordinance and injunctive relief pursuant to his authority as the Building Inspector under G.L.c. 40A, §7 (1994 ed.), to enjoin Ridino from continuing the nonconforming use of the building. The Superior Court has jurisdiction to enforce the provisions of G.L.c. 40A, and any ordinances or by-laws adopted thereunder, and may enjoin violations thereof.
Ridino claims the use of the building as a five-unit multifamily dwelling is a pre-existing, non-conforming use and is protected under G.L.c. 40A, §6 (1994 ed.).[5] Ridino also contends such non-conforming use is protected under G.L.c. 40A, §7 because it predated enactment of the “Residence B” zoning ordinance and has continued without interruption to the present day. Furthermore, Ridino claims he is entitled to equitable relief based on the City of Waltham’s Building Inspectors’ alleged conduct and misrepresentations.
FINDINGS OF FACT
Ridino, as trustee of the Ridino Realty Trust, acquired the building located at 150 Brown Street in 1971 and maintains ownership today. The building is currently used as a five-unit multifamily dwelling located in a “Residence B” district which only permits single-family or two-family dwelling use. The “Residence B” district classification has been in effect in Waltham since 1925. Ridino has failed to produce evidence that demonstrates the nonconforming use predated enactment of the “Residence B” district zoning ordinance and continued uninterrupted to date.
The building has undergone several different uses since 1925. At times the building has conformed to the “Residence B” zoning restrictions, and at other times not. According to the Waltham Board of Assessors’ records, the nonconforming use of the building has not continued uninterrupted since 1925.[4] Hence, the building has become an unprotected nonconforming use under G.L.c. 40A, §6.
In 1971, the same year Ridino acquired the property, he applied for a building permit to build an “addition to existing 4 Fam. Dwelling, and interior alterations” and also identified the “Purpose of the Building” as a four unit multifamily dwelling.[5] Ridino refurbished the first and second floors of the building (four units), but left the third floor apartment (fifth unit) intact. Ridino also installed rough plumbing in the basement of the building, apparently contemplating a sixth unit. The Building Inspector had knowledge of the rough plumbing in the basement. This court finds that the Building Inspector did not make representations to Ridino regarding authorization to add a sixth unit to the building.
*447 In 1973, Ridino was denied a variance from the Waltham Zoning Board of Appeals for a fifth unit in the building.[6] In his brief, Ridino argued, inter alia, that he was seeking an extra unit in the building because of extreme financial hardship. In 1990, a criminal action was dismissed against Ridino for maintaining a fifth unit.[7] The court finds that Ridino’s allegations that city officials threatened lawsuits and hurled racial epithets repeatedly in 1990 and 1991, are not credible. In 1991, Ridino installed a second means of egress to the third floor unit in order to conform with the building code.[8] The building permit which Ridino obtained in 1991 for the stairway to the third floor (fifth unit) of the building did not indicate the number of units in use at the time. In 1994, the Building Inspector for the City of Waltham (Robert J. Como) sent a Cease & Desist Order to Ridino requiring him to restore the properly to its lawful use.
RULINGS OF LAW
Pre-existing Nonconforming Use — G.L.c. 40A, §6
To be a valid nonconforming use, the use must have begun at a time when it was legal. Hall v. Zoning Board of Appeals of Edgartown, 28 Mass.App.Ct. 249, 256-57 (1990); Building Inspector of Chatham v. Kendrick, 17 Mass.App.Ct. 928, 929 (1983). A nonconforming use is one which commenced prior to its being made illegal by the adoption of a zoning ordinance and which has continued uninterrupted since that date. Hall v. Zoning Board of Appeals of Edgartown, supra. Generally, in enforcement actions, “. . . the building inspector has the burden of proving that the plaintiffs use of its premises violates the by-law.” The Brotherhood of Alpha Upsilon v. Zoning Board of Appeals of Bridgewater, 15 Mass.App.Ct. 991, 992 (1983). However, once evidence has been presented which demonstrates that the use of a property is contrary to the current zoning ordinance, the burden shifts to the party hying to establish that his use is a protected non-conforming use. Derby Refining Co. v. City of Chelsea, 407 Mass. 703 (1990); Building Inspector of Chatham v. Kendrick, 17 Mass.App.Ct. 928 (1983); Ridino has the burden of showing that he is entitled to the protection of G.L.c. 40A, §6. Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, 385 Mass. 205, 223 n. 11 (1982). Ridino has failed to produce any evidence of a valid continuing preexisting nonconforming use of the building as a multifamily dwelling.
Statute of Limitations — G.L.c. 40A, §7 Units Three (3) and Four (4)
If the building inspector, in his role of reviewing all building permit applications, improperly issues a building permit the municipality is not estopped from enforcing the zoning ordinance or bylaw, unless barred by the statute of limitations set forth in G.L.c. 40 A, §7. Ferrante v. Board of Appeals of Northampton, 345 Mass. 158 (1962). The second paragraph of G.L.c. 40A, §7 contains two separate limitations periods for actions brought to redress zoning violations: the first, six years, applicable to actions complaining of structural violations or use violations if “the real property has been improved and used in accordance with the terms of the original building permit; and the second, ten years, applicable to actions complaining of structural violations for which no permit was given.”[9] Lord v. Zoning Board of Appeals of Somerset, 30 Mass.App.Ct. 226, 111 (1991). The obvious intent of the legislature in enacting this provision was “. . .to limit the time which building permits could be attacked as issued in violation of a zoning regulation.” Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth, supra at 218.
The six-year limitations period in G.L.c. 40A, §7 does not legitimize a use not specifically identified in the building permit. Lord v. Zoning Board of Appeals of Somerset at 227. In Lord, the court specifically found that the building permit made no reference to a two-family construction or use. In this case however, reference was made in the building permit to multifamily use, as it stated that the purpose was to build an “addition to existing 4 Fam. Dwelling, and interior alterations.” Therefore, under G.L.c. 40A, §7 the four-unit use contemplated in the 1971 building permit is entitled to protection from enforcement of the zoning ordinance under the six-year limitations period.[10]
Plaintiff argues that Ridino’s use of the premises as a five-unit dwelling was not in accordance with the four-family use identified in the building permit. However, the phrase “used in accordance with the terms of the original building permit” contained in G.L.c. 40A, §7 does not require such a restrictive reading. The four-unit use was “in accordance with the building permit" despite the additional use of the fifth unit. The fifth unit use does not divest the dwelling of the protection under G.L.c. 40A, §7 for the third and fourth unit. Contrary to plaintiffs proposed interpretation, the Lord court established that “references” or “contemplated” uses identified in the building permit may qualify for protection under G.L.c. 40A, §7. Id. at 227-28.
Unit Five (5) — G.L.c. 40A, §7
Ridino contends that the fifth unit is also protected by the statute of limitations contained in G.L.c. 40A, §7. However, the fifth-unit use was not in accordance with the terms of the 1971 building permit, as it was not referenced, nor was it contemplated in the permit. Lord v. Zoning Board of Appeals of Somerset, supra at 227-28. Accordingly, the fifth-unit nonconforming use is not entitled to protection under G.L.c. 40A, §7. Ridino argues that although the fifth unit may not have been referenced or contemplated in the building permit, it was contemplated by the parties and under Lord, he is entitled to protection. Id. at 227. Ridino failed to produce credible evidence to support his claim that all the parties contemplated the fifth unit and the court has not so found.
Furthermore, the 1991 building permit (No. 548) which authorized Ridino to “(rjaise the roof to install required means of egress to third floor" is not entitled to *448 the protection of the six-year statute of limitations under G.L.c. 40A, §7, as the enforcement action has commenced within the six-year statutorily proscribed period.[11]
Equitable Relief — Estoppel
Ridino claims that because he relied to his detriment on certain statements made by the Building Inspector regarding the egress to the fifth unit, the City of Waltham should be estopped from enforcing the Residence B zoning ordinance. In order to assert the claim of estoppel, the proponent must establish that a representation was made to him for the purpose of inducing a course of action on his part and that he relied on the representation to his detriment. Clickner v. City of Lowell, 422 Mass. 539, 544 (1996) (quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 123 (1992)). Ridino claims that he relied on the former Building Inspector Creonte’s opinion that he continue to rent the fifth-floor unit because it was legally necessary in order to preserve it as a “non-conforming” use. Ridino claims his reliance was detrimental, in that he expended significant effort and money in conforming with the building code. The court does not find that the Building Inspector made such a statement. In any event, estoppel cannot be used to bar a zoning enforcement officer from enforcing the provisions of a zoning ordinance. Town of Seekonk v. Anthony, 339 Mass. 49 (1959); Ferrante v. Board of Appeals of Northampton, 345 Mass. 158 (1962). The courts have recognized that the doctrine of estoppel is generally not applied to the government’s exercise of its public duties. Highland Tap of Boston, Inc. v. Commissioner of Consumer Affairs and Licensing of Boston, 33 Mass.App. Ct. 559, 568 (1992). Even where a property owner has made a substantial financial investment, laches or estoppel is not a defense to an action to enforce a city’s zoning ordinance. Cape Resort Hotels, Inc. v. Alcoholic Licensing Board of Falmouth, 385 Mass 205 (1982).
In extenuating circumstances, the doctrine of estoppel remains available, in accordance with general equitable principals. Marblehead v. Deery, 356 Mass. 532, 538 (1969) (where the actions of a government agent rise above mere inadvertence, the defense becomes more within the purview of “unclean hands” and other equitable principles. A court can deny the government authority an injunction, where an “unusual combination of circumstances leads to deny mandatory injunctive relief.”).[12] However, such extenuating circumstances are not present here where it is Mr. Ridino himself who comes before the court with unclean hands.
ORDER FOR JUDGMENT
For the foregoing reasons, it is therefore ORDERED that judgment enter for Mr. Ridino with respect to units three and four. Furthermore, Mr. Ridino is hereby ORDERED to cease and desist the fifth unit use of the building located at 150 Brown Street.

 See Trial Exhibit 5, Attested True Copies from the Waltham Board of Assessors Valuation Book. The records show that the property was being used as follows: single dwelling (with one stable) in 1930 and 1931; single dwelling (with one garage) in 1940 and 1950; multifamily dwelling with three apartments (with three garages) in 1960 and 1969; multifamily dwelling with three apartments in 1970 and 1971; and multifamily dwelling with four apartments in 1973.

 Application for Permit to Build in Waltham, Mass., (Permit No. 210) dated June 2, 1971, in which Ridino lists the purpose of the building as “4 Fam. Dwelling" (Trial Exhibit 4E). The parties argue over the effect of this description of the building as a four (4) unit dwelling. Gaudet argues Ridino should be estopped from asserting more than four units in the building. Ridino argues that this description is not an assertion of the actual number of units in the building, but merely a reflection of how many units were to be refurbished.

 See Trial Exhibit 6A, The Petition to the Board of Appeals for variation from the requirements of the Zoning Ordinance, dated October 30, 1973. The petition states as follows: “I Antonio Ridino hereby petition the Board for a variation from the requirements of the zoning ordinance to allow: The construction, alteration and maintenance of one apartment at 150 Brown Street, Waltham, said building presently contains four (4) apartments and is in a Resident B Zoning District. There presently exist at said building 4 units with the appearance of a two-family structure, lot area is 6117 square feet with parking for seven automobiles. Petitioner seeks a variance to add one more structure.” On the face of the petition, it is clear Ridino was seeking a variance for the fifth unit in the building.

 Dismissal was granted because the statute of limitations had expired. Gaudet was authorized to seek a civil injunction against Ridino, but he failed to do so. Criminal Proceeding before the District Court concerned the building code, not zoning code. No collateral estoppel arises. Per Order of the Court (McHugh, J.) (February 6, 1996).

 Arial Exhibit 4F, Application for Permit to Build, Permit No. 548, dated April 1991 (permit described the work as “(r)aise the roof to install required means of egress to third floor . . ." at an estimated cost of “$5,000”). Ridino failed to produce other evidence that the actual cost exceeded the estimate on the permit. See also Trial Exhibit 3.

 Ahe limitations period runs in each case from the commencement of the alleged violation. The six-year limitation period applicable to zoning violations ostensibly authorized by a building permit, covers both structural violations and use violation, whereas the ten-year period limitations period for zoning violations unsanctioned by building permit covers only structural violations.

 Well over six years has elapsed between the time the third and fourth unit were refurbished and the time the plaintiff brought this action.

 The building permit is dated April 4, 1991 and this action was filed in 1995, prior to the expiration of the six-year period.

 See Fitzsimonds v. Board of Appeals of Chatham, 21 Mass.App.Ct. 53, 58 n.9 (1985), where the court refused to extend the Derby decision and referred to it as “a special and singular example of circumstances warranting a limitation, reflecting equitable considerations, of the principle that forbids estopping a municipality because of the acts of one of its officials.”

 G.L.c. 40A, §6 provides, in pertinent part: “. . . a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, or to a building or special permit issued before the first publication of notice of the public hearing . . .”